909 F.2d 1208
 Marlin E. "Bill" JONES, Appellant,
v.
Martin GUTSCHENRITTER, individually and in his capacity as
Chief of Police of North Platte, Nebraska, and Rich
Thompson, individually and in his official capacity as
police officer for the City of North Platte, Nebraska, Appellees.
 No. 89-1431.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 11, 1989.
Decided July 31, 1990.
 
 David Jorgensen, Kearney, Neb., for appellant.
 William T. Wright, Kearney, Neb., for appellees.
 Before McMILLIAN, JOHN R. GIBSON and BOWMAN, Circuit Judges.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 Marlin E. "Bill" Jones appeals a district court order dismissing his suit, filed under 42 U.S.C. Sec. 1983 (1982), for lack of subject-matter jurisdiction. Jones argues that the district court erred in determining that the actions taken by Officer Richard Thompson, the appellee in this matter, did not constitute state action. We reverse and remand to the district court.
 
 
 2
 In March of 1985, Jones and Kenneth Larsen entered into an oral agreement for Jones to lease part of the Larsen Square Complex in North Platte, Nebraska. The office complex was divided into five units. The lease was to run for one year, commencing May 1, 1985. (Tr. 15). For the first six months, Jones was to occupy one of the units rent-free, with Larsen responsible for utilities costs, under the condition that Jones would do the finish work on two of the units, including the one he occupied, and a common hallway. According to Jones, it was understood that Larsen and Jones would negotiate a fair rental value for the unit at the end of the first six-month period, November 1, 1985. (Tr. 18).
 
 
 3
 On November 8, 1985, Larsen called Jones and demanded that Jones vacate the complex. According to Jones, Larsen said:
 
 
 4
 I want you out of there and I want you out immediately. If you don't leave, I'll find someone with authority. I want you out. If you don't, I'll find some way, one way or the other, to get you out of there.
 
 
 5
 (Tr. 26). Jones testified that he was angered by Larsen's demand and replied, "You better not." (Tr. 27). At the time of this call, Larsen had started eviction proceedings against Jones, but had no formal court order ordering Jones' eviction. Larsen then contacted the North Platte Police Department and requested that a law enforcement officer be present to prevent any violent confrontation with Jones while Larsen disconnected Jones' electrical service. (Tr. 84). Officer Thompson, on patrol in his police cruiser, was contacted by the police dispatcher and responded to the call. When Officer Thompson arrived at the complex, in full uniform, including a visible side-arm, Larsen met him. According to Officer Thompson, Larsen told him that he was at the complex to disconnect Jones' electrical service, that Jones had threatened him with bodily injury, that there was a shotgun on the premises, and that he wanted Thompson there to make sure Larsen did not get hurt. (Tr. 71).
 
 
 6
 Larsen, accompanied by Officer Thompson, then entered through the front door of the complex and proceeded down the common hallway, located inside the unit Jones was occupying, to the warehouse area where the electrical service box for Jones' unit was located. While in the common hallway, Thompson and Jones saw each other as Thompson and Larsen passed Jones' office window. (Tr. 28, 75-76). Once in the warehouse area, Thompson stood guard several feet away while Larsen disconnected the electrical service to Jones' unit. (Tr. 89). Thompson testified that he was only present to ensure that a "violent confrontation" did not take place. (Tr. 89). At no time did Officer Thompson question Larsen or Jones concerning the parties' respective rights to occupy the premises, the lease between the parties, the existence of a court order or process, or the contents of the unit effected by the electrical termination. (Tr. 74-75).
 
 
 7
 Jones testified that he did not attempt to stop the disconnection because he was "fearful" of the North Platte Police Department. (Tr. 35). He claims this fear resulted from an earlier incident in which he was strip-searched after being arrested for letting his dog run free. Jones stated:
 
 
 8
 I was--I felt intimidated. I was afraid because there was somebody there with authority because Mr. Larsen said he was going to bring somebody with authority, and he sure did. I didn't want to cause any trouble and I didn't want to get in trouble if I tried to protect myself or tried to stop Mr. Larsen.
 
 
 9
 (Tr. 36). Jones stated that if Officer Thompson had not been there, Jones would have done everything in his power to stop the termination of his electrical service. (Tr. 66). Jones' electrical service was disconnected for three days. On November 11, 1985, two North Platte Police Officers, including Officer Thompson, accompanied Larsen back to the complex and reconnected Jones' electrical services. (Tr. 36, 81). As a result of these actions, Jones filed a suit under 42 U.S.C. Sec. 1983 alleging that Thompson's actions caused him to be deprived of his electrical service without due process of law.[1]
 
 
 10
 At the close of Jones' case, Thompson moved for a directed verdict, arguing that Jones had failed to establish a prima facie case. In particular, Thompson argued that Jones had failed to demonstrate that the officer had acted to prevent Jones from exercising his right to prevent Larsen from disconnecting his electrical service. The district court granted the motion, on the ground that the court lacked subject-matter jurisdiction. The court based this conclusion on its finding that "there is no state action involved and therefore no color of state law involved in this matter." (Tr. 113). This appeal followed.
 
 
 11
 While the district court viewed the issue before it as one concerning subject-matter jurisdiction,[2] its inquiry was in response to a motion for directed verdict at the close of plaintiff's evidence. Regardless, the determinative issue, viewed both from a standpoint of jurisdiction and from the standpoint of whether Jones made a submissible case under section 1983, is the same; specifically, whether Thompson was acting under color of state law.[3]
 
 
 12
 "In reviewing the propriety of granting a motion for directed verdict, we must utilize the same standard as the district court." Rodgers v. Thomas, 879 F.2d 380, 382 (8th Cir.1989). Accordingly, we must:
 
 
 13
 (1) resolve direct factual conflicts in favor of the nonmovant, (2) assume as true all facts supporting the nonmovant which the evidence tended to prove, (3) give the nonmovant the benefit of all reasonable inferences, and (4) deny the motion [or reverse the directed verdict ] if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn.
 
 
 14
 Dace v. AFC Indus., 722 F.2d 374, 375 (8th Cir.1983) (emphasis added). The facts in this opinion are stated under these conditions. As we said in Dace:
 
 
 15
 Probably this formulation will result in fewer grants of motions for directed verdict than would result if judges were free to take cases from the jury because of what they view as very strong evidence supporting the moving party. Occasionally verdicts may be returned with which judges strongly disagree. This is a price, we think, worth paying for the jury system, which is enshrined in the Bill of Rights and sanctified by centuries of history. When questions of fact are involved, common sense is usually more important than technical knowledge, and twelve heads are better than one.
 
 
 16
 Id. at 376-77 (footnote omitted).
 
 
 17
 There are two requirements for recovery under a section 1983 claim. First, a plaintiff must establish a violation of a right secured by the Constitution and laws of the United States. The district court, in granting judgment against Jones, assumed that he had made the required showing as to this issue. Thompson makes no argument to the contrary on appeal and we need not further consider this issue. The second requirement is that the deprivation was committed by a defendant acting under the color of state law.[4] See Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). It was on this issue that the directed verdict was entered and it is to this issue that we now turn.
 
 
 18
 Our analysis of the deprivation "under the color of state law" requirement of section 1983 begins with Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), in which the Supreme Court noted that "the deprivation of a federal right [must] be fairly attributable to the State," id. at 937, 102 S.Ct. at 2753, and set out a two-part approach for resolving the question of fair attribution:
 
 
 19
 First, the deprivation must be caused by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible....
 
 
 20
 Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.
 
 
 21
 Id.
 
 
 22
 "The traditional definition of acting under the color of state law requires that the defendant in a Sec. 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (quoting United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)). Further, "a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." Id. at 50, 108 S.Ct. at 2256. Cf. Griffin v. Maryland, 378 U.S. 130, 135, 84 S.Ct. 1770, 1773, 12 L.Ed.2d 754 (1964) (holding that "[i]f an individual is possessed of state authority and purports to act under that authority, his action is state action"). In this analysis, "the nature of the act performed is controlling." Revene v. Charles County Comm'r, 882 F.2d 870, 872 (4th Cir.1989).
 
 
 23
 The evidence before the district court was that: (1) Thompson, while on patrol in his police cruiser and pursuant to instruction from the police dispatcher, went to the Larsen Square Complex to respond to a call from Larsen (Tr.70-71); (2) Thompson, in order "to make sure there was no violent confrontation" between Larsen and Jones (Tr. 81), and in accord with his department's policy (Tr. 85), accompanied Larsen into the complex, through a common hallway, and into a warehouse area (Tr. 72, 89); and (3) Thompson stood by, uniformed and armed, several feet away and was present while Larsen disconnected the electrical service to Jones' unit. (Tr. 89). Jones saw the uniformed officer accompany Larsen down the hallway into the area where the electrical service box for Jones' unit was located and heard their voices coming from the warehouse area. (Tr. 31). In order to listen to their voices, to see if they were actually going to disconnect his electrical service, Jones moved from his living room area to his kitchen; while monitoring their voices, his electricity went off. (Tr. 31).
 
 
 24
 There is no question that Officer Thompson is a state actor, but the more narrow question before us is whether Officer Thompson participated with Larsen in turning off the electricity to the extent that we can conclude that state action deprived Jones of his electrical service.
 
 
 25
 The district court based its order on its conclusion that Jones failed to adequately establish state action. The court stated that "[t]here has to be some action by Mr. Thompson which engenders that fear or intimidation and simply being present is not enough," (Tr. 115), and found that Thompson's actions had the sole purpose of assisting Larsen to maintain the peace, consistent with his duties as a law enforcement officer. (Tr. 118). The court relied on Menchaca, 613 F.2d at 510-11; Howerton v. Gabica, 708 F.2d 380, 383 (9th Cir.1983); and Harris v. City of Roseburg, 664 F.2d 1121, 1127 (9th Cir.1981).
 
 
 26
 These cases, with differing factual situations, establish legal principles under which we may consider the issue of state action. In Menchaca, the law enforcement officers answered a disturbance call and told the Menchacas, whose car was being repossessed by Chrysler agents, that they were simply present to keep the peace, and the officers departed before the actual repossession. 613 F.2d at 510. The court viewed the question as one of jurisdiction. Id. at 511. Evidence was presented that the officers did no more than inform Menchaca that he could be arrested if he continued to use loud and abusive language and create a breach of the peace. The district court found there was no conspiracy as alleged, no other indicia of state involvement, and therefore no state action. Id. at 510. This decision was affirmed on appeal, the court stating that "the testimony failed to show [police] intervention and aid." Id. at 513.
 
 
 27
 In Harris, law enforcement officers were again present during a repossession. One of the officers told Harris, who had come out of his house, to stand back or get away and that the officer was there to stand by. 664 F.2d at 1124. Harris also testified that the officer told him that if he "interfered either any further or in any way that [he] was going straight to jail" and further that if the officers had not been there, his truck would not have been taken. Id. at 1127. The court in Harris noted that:
 
 
 28
 [T]here may be a deprivation within the meaning of Sec. 1983 not only when there has been an actual "taking" of property by a police officer, but also when the officer assists in effectuating a repossession over the objection of a debtor or so intimidates a debtor as to cause him to refrain from exercising his legal right to resist a repossession. While mere acquiescence by the police to "stand by in case of trouble" is insufficient to convert a repossession into state action, police intervention and aid in the repossession does constitute state action. Harris' deposition raises factual questions which preclude summary judgment on this issue.
 
 
 29
 Id.
 
 
 30
 In Howerton, the facts concerning law enforcement involvement were similar to those in this case, but the entire thrust of the case was to place liability on the lessor of a trailerhouse rather than the police. See 708 F.2d at 384.
 
 
 31
 Applying the principles in Menchaca and Harris, we are satisfied that, considering the actions of Officer Thompson in a light most favorable to Jones and giving Jones all of the favorable inferences to which he is entitled, there is an issue for a trier of fact as to whether Officer Thompson was assisting in effectuating the disconnection of Jones' electrical service over the objection of Jones or so intimidated him as to cause him to refrain from exercising his legal right to resist the disconnection. We believe that a jury could find from these facts more than mere acquiescence or standing by in case of trouble. It is true that there was no direct confrontation or exchange of words between Thompson and Jones. On the other hand, Larsen made clear that an officer was summoned because of threats that Jones had made earlier and because of Larsen's fear that Jones was armed. Officer Thompson entered the building, went to the electrical service box, and stood a few feet away from Larsen while Larsen disconnected Jones' electrical service. Thompson saw Jones as he walked down the hallway with Larsen toward Jones' electrical service box and, more importantly, Jones had seen Thompson, uniformed and armed, pass by with Larsen and proceed to the electrical service box where he heard the voices of the two before the electricity went off. Thompson neither departed before the disconnection of the utilities as did the officers in Menchaca, nor engaged in direct, verbal confrontation as occurred in Harris. Thus, factually, the instant case occupies the middle ground between Menchaca and Harris.
 
 
 32
 There was evidence that had the officer not been present Jones would have taken action to protect his rights, which is evidence similar to that in Harris. The district court viewed the evidence before it and stated: "There has to be some action by Mr. Thompson which either engenders that fear or intimidation and simply being present is not enough." We believe that it was for the jury to determine whether the close proximity of Officer Thompson to Larsen when he disconnected Jones' electrical services could have engendered fear or intimidation, that the jury could have concluded that Officer Thompson was not simply present and standing by, but rather was lending police intervention and aid in the disconnection of Jones' electrical services, and that Thompson's action constituted state action. Under these circumstances, the district court erred in directing a verdict for Thompson.
 
 
 33
 For these reasons, we reverse the district court's grant of a directed verdict and remand this case to the court for further consideration consistent with this opinion.
 
 
 34
 BOWMAN, Circuit Judge, dissenting.
 
 
 35
 I respectfully dissent.
 
 
 36
 The Court goes astray in this decision by treating the question whether Jones's alleged wrongful deprivation of electrical service occurred "under color of state law" as a question of fact. The District Court correctly treated this question as being jurisdictional--a question of law for the court, not a jury, to resolve. I know of no decision of the United States Supreme Court that treats this sort of question as anything other than a question of law, and the opinion of our Court in this case cites no such decision. Indeed, in the very case with which our Court begins its analysis, Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), the Supreme Court decided the "under color of state law" question presented by the facts of that case as a question of law. In reversing the decision of the court of appeals, which had held that on the facts presented there was no state action, the Supreme Court did not suggest that the court of appeals had erred in treating the question as a question of law. Instead, the Court held that the court of appeals had gotten the law wrong, and proceeded itself to decide as a matter of law that the state action requirement for maintaining a Sec. 1983 action had been satisfied and that the case should be remanded for further proceedings on the remaining issues. Lugar, 457 U.S. at 935, 942, 102 S.Ct. at 2752, 2756.
 
 
 37
 When we treat the "under color of state law" question as a question of law, as I believe we must, it is clear that the temporary turnoff of Jones's electrical service was not done "under color of state law." Officer Thompson merely responded to a call requesting the presence of an officer to keep the peace between Jones and his landlord. Officer Thompson was in no position to adjudicate the relative rights of Jones and his landlord, and did nothing more than stand by while the landlord turned off the power to Jones's unit. The officer did nothing to manifest any hostility toward Jones. There was never a confrontation, as Jones remained in his quarters throughout the incident. That Jones and Officer Thompson briefly saw one another through a window is of little, if any, relevance. If Jones was intimidated by the mere presence of Officer Thompson, and for that reason failed to step forward and assert his position that the landlord was not entitled to turn off the power, that is Jones's problem, not Officer Thompson's, and cannot properly be used to convert the officer's benign presence into a basis for the imposition of liability. Officer Thompson was there merely to head off the possibility of violence, and that is all he did. It follows that neither the landlord's decision to turn off Jones's electrical service nor the landlord's physical act of turning off that service can "be fairly attributable to the State." Lugar, 457 U.S. at 937, 102 S.Ct. at 2753. Although Officer Thompson was on the scene qua police officer and was a state actor, his role there as peacekeeper (and nothing more) was insufficient to convert the landlord's purely private action into state action or to serve as a predicate for a suit against these officers under Sec. 1983.
 
 
 38
 For the reasons I have briefly stated, I would affirm the District Court's dismissal of this Sec. 1983 suit.
 
 
 
 [1]
 In his original action, Jones also included Martin Gutschenritter, Chief of Police of North Platte, Nebraska, individually and in his official capacity, as a defendant. (Jt.App. at 1). Gutschenritter was dismissed prior to trial after his motion for summary judgment was granted. Jones does not appeal that order
 
 
 [2]
 The court prefaced its analysis by stating, in part, that:
 Now, the difficulty I think that we are all faced with here a little bit is that the motion as it is being presented is presented in the context of a motion for a directed verdict that there is no color of state law, and I am really going to approach this a little different because while the parties in their Pretrial Order have stipulated that this Court has jurisdiction, that obviously is not something that the parties can give to the Court. Whether or not this Court has jurisdiction is a question of law essentially to be presented to the Court and the Court may make, and is obligated, in fact, to make findings of fact as it relates to the subject of jurisdiction.
 (Tr. 113).
 
 
 [3]
 We recognize that some courts have considered the issue on a jurisdictional basis to justify an early disposition of a case. See Menchaca v. Chrysler Credit Corp., 613 F.2d 507 (5th Cir.), cert. denied, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980) (case dismissed for lack of subject matter jurisdiction after a full evidentiary hearing). Here, however, the issue had been tried with the jury present
 
 
 [4]
 Section 1983 states, in part, that:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 42 U.S.C. Sec. 1983.