USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1136 AMARILIS PARRILLA-BURGOS, ET AL., Plaintiffs - Appellants, v. FELIX HERNANDEZ-RIVERA, ET AL., Defendants - Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Salvador E. Casellas, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Campbell, Senior Circuit Judge, ____________________ and DiClerico, Jr.,* District Judge. ______________ _____________________ Joan S. Peters, with whom Andr s Guillemard-Noble and ________________ ________________________ Nachman, Santiago & Guillemard were on brief for appellants. ______________________________ John F. Nevares, with whom Lizzie M. Portela and Smith & _______________ _________________ ________ Nevares were on brief for appellee Carlos J. L pez-Feliciano. _______ Roxanna Badillo-Rodr guez, Assistant Solicitor General, with _________________________ whom Carlos Lugo-Fiol, Solicitor General, and Edda Serrano- _________________ _____________ Blasini, Deputy Solicitor General, were on brief for appellees _______ Fernando V zquez-Gely, Felipe Aponte-Ortiz, Angel L. D az, Angel L. Hern ndez-Col n and Luis E. L pez-Lebr n. ____________________ March 19, 1997 ____________________  ____________________ Of the District of New Hampshire, sitting by designation. DiClerico, District Judge. The plaintiffs, relatives DiClerico, District Judge. _______________ of the decedent, Lionel Galletti Roque ( Galletti ), brought this action under 42 U.S.C. 1983 against the defendants, members of the Puerto Rico Police Department, seeking damages allegedly suffered when one of the defendants, F lix Hern ndez Rivera ( Hern ndez ), shot and killed Galletti during a fight at a bar. The district court granted summary judgment in favor of the defendants, finding that Hern ndez, who was on medical leave at the time of the shooting, was not acting under color of state law. The district court initially denied the defendants motion for summary judgment, but reconsidered that ruling in light of our decision in Mart nez v. Col n, 54 F.3d 980 (1st Cir.), cert. ________ _____ _____ denied, 116 S. Ct. 515 (1995). In this appeal, the plaintiffs ______ challenge the district court s grant of summary judgment. For the reasons expressed below, we affirm the district court s decision. Factual and Procedural Background1 Factual and Procedural Background _________________________________ On January 2, 1989, at around 10:00 p.m., plaintiffs  decedent, Galletti, was drinking at a bar in Trujillo Alto, Puerto Rico, known as Carlos Place. Galletti was accompanied by Angel Ram rez Fonseca, Ilari n Rosado, and two individuals identified only as Algar n and Ity. At that time, codefendant Hern ndez, an officer of the Puerto Rico Police Department,  ____________________ In reviewing the decision on the defendants motion for summary judgment, we recount and consider only those facts that have been alleged by the plaintiff or are not in dispute. -2- -2- arrived with an unidentified group of his friends. Hern ndez, who was on medical leave due to gastroenteritis, was not in uniform but was carrying his police identification and service revolver. Police department policy states that Puerto Rico police officers are on duty twenty-four hours a day and therefore each officer is required to carry identification and a service revolver at all times. Inside Carlos Place, Hern ndez approached Galletti s group and words and threatening glances were exchanged. Galletti challenged Hern ndez hostile attitude, stating that he had done nothing to provoke it. Hern ndez responded, I ll look at you whichever way I please, because I m a cop.  The situation escalated. Hern ndez slapped Galletti s friend Ity. Galletti told Hern ndez, Well, you don t have to give me dirty looks. You look at me really bad and I have done nothing to you. Hern ndez replied, I look at anybody I want, because I m a cop. Anybody I decide I want to look at dirty, I look at them dirty. At this point the owner of the bar, apparently concerned by the interchange, told Hern ndez, Just because you are the law, you don t need to intimidate people,  and asked him to leave. Hern ndez told the bar owner not to meddle and to leave the combatants alone because it was none of his business. By this time the conflict had attracted the attention of patrons outside the bar, who entered the bar to better view the confrontation. According to the plaintiffs, Hern ndez -3- -3- identified himself to the crowd as a police officer, saying that he was supposed to be there to establish the peace and order  and showed them his police identification, apparently to prevent them from interfering in the conflict. This stopped the fracas for about five minutes. However, as Hern ndez was leaving the bar, one of his friends and one of Galletti s friends resumed hostilities. At this point, Galletti told Hern ndez, Well, you leave the gun, and me and you will have it out, outside. Hern ndez responded, I don t need a gun to fight you. Come on, step outside.  Hern ndez, despite his statement to the contrary, took his service revolver with him as both parties went outside. While Galletti took off his sweater, Hern ndez threw a beer can at him. Galletti responded by pushing Hern ndez. Hern ndez then took out his service revolver and fired six shots at Galletti. The first shot missed Galletti and hit a bystander but the next five hit Galletti, killing him. On December 27, 1989, Galletti s survivors brought this 1983 action against Hern ndez2 and other supervising officers (the supervisory defendants ).3 On August 30, 1991, supervisory defendant Carlos L pez Feliciano filed a motion for summary  ____________________ Hern ndez never answered the complaint, and the district court entered a default against him on August 31, 1990. He played no further role in the case or the subsequent appeal. The other officers named as defendants are: Carlos L pez Feliciano, Luis L pez Lebr n, Angel Hern ndez, Luis Carrillo, Angel D az, Fernando V zquez-Gely, F lix Aponte-Ortiz, and Jos  Lucena. -4- -4- judgment, which the other supervisory defendants joined, on the ground that Hern ndez was not acting under color of state law when he shot Galletti. On November 1, 1991, Judge Carmen Consuelo Cerezo denied the motion for summary judgment. On March 31, 1992, supervisory defendant L pez Feliciano filed a motion for reconsideration of that decision. At this time, the other supervisory defendants filed a motion to dismiss, asserting that the plaintiffs had not alleged facts necessary to establish supervisory liability. Judge Raymond L. Acosta referred these motions to Magistrate Judge Jes s Antonio Castellanos for a report and recommendation. On April 29, 1994, Magistrate Castellanos recommended that: (1) the motion for reconsideration filed by supervisory defendant L pez Feliciano be denied; (2) the motion to dismiss filed by supervisory defendants Luis L pez Lebr n, Angel Hern ndez, Angel D az, Fernando V zquez-Gely, and F lix Aponte- Ortiz be denied; and (3) the motion to dismiss filed by supervisory defendants Luis Carrillo and Jos Lucena be granted. On March 16, 1995, Judge Salvador E. Casellas issued an order adopting the magistrate s report and recommendation.4 On May 31, 1995, we issued our decision in Mart nez v. Col n, 54 F.3d 980 ________ _____ (1st Cir.), cert. denied, 116 S. Ct. 515 (1995). On June 6, _____________ 1995, supervisory defendant L pez Feliciano filed a motion,  ____________________ This order ended the involvement of supervisory defendants Carrillo and Lucena in the action. -5- -5- joined in by the remaining supervisory defendants, requesting the district court to reconsider its decision on the summary judgment motion in light of Mart nez. On November 29, 1995, Judge ________ Casellas vacated the court s order of November 1, 1991, and dismissed the case on the ground that defendant Hern ndez was not acting under color of law for the purposes of 1983 when he killed Galletti. The plaintiffs appealed this decision. Discussion Discussion __________ The plaintiffs assert that the district court erred in determining as a matter of law that Hern ndez acts were not taken under color of state law.5 Specifically, they challenge the district court s application of Mart nez to this case.6 ________  ____________________ Section 1983 provides, in pertinent part: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C.A. 1983 (West 1994). We discuss this issue in terms of color of state law despite the fact that Puerto Rico is not a state because Puerto Rico enjoys the functional equivalent of statehood in regard to section 1983 and, thus, state law includes Puerto Rico law. Mart nez, 54 F.3d at 984. ________ The plaintiffs also contend that in granting summary judgment for the defendants Judge Casellas abused his discretion by vacating both the prior order of Judge Cerezo denying summary judgment and his own order adopting the report and recommendation of Magistrate Castellanos. The plaintiffs assert that this action was improper due to the law of the case established by the prior decisions. We disagree. Under the circumstances, our -6- -6- 1. Summary Judgment Standard 1. Summary Judgment Standard A district court may grant summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c). In this case, summary judgment will lie if the record, even when taken in the aspect most favorable to the nonmovant fails to yield a trialworthy issue as to some material fact. In applying this principle, it is important to bear in mind that not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared. Mart nez, 54 F.3d at 983-84 (citation omitted). For the purposes ________ of this appeal, we exercise de novo review and adopt the _______ plaintiffs version of all controverted facts. See id. ___ ___ 2. Applying Mart nez 2. Applying Mart nez ________ The plaintiffs assert that the district court improperly applied Mart nez to this case. In Mart nez, an on- ________ ________  ____________________ decision in Mart nez provided ample justification for the ________ district court to revisit its prior decisions concerning action under color of state law, and the court did not abuse its discretion by so doing. See United States v. Lachman, 48 F.3d ___ _____________ _______ 586, 590 (1st Cir. 1995) (district court judge has latitude to revisit own earlier rulings); United States v. Rivera-Mart nez, _____________ _______________ 931 F.2d 148, 150-51 (1st Cir. 1991) (district court has ability to reopen issues when controlling authority makes subsequent contrary decision of law). -7- -7- shift7 police officer accidentally shot and maimed a fellow off- shift officer while harassing that officer in the station house. See 54 F.3d at 982, 987. The harassing officer never expressly ___ asserted his authority as a police officer, but he was in uniform and armed with his service revolver. See id. at 987. The ___ ___ defendants were other police officers, at least one of whom was a supervisor, who observed the incident but did not intervene. See ___ id. at 983. We reviewed the district court s award of summary ___ judgment in favor of the defendants and held that, under the totality of the circumstances, it was clear that the officer was not acting under color of state law because he was engaged in the personal pursuit of private violence, making the grant of summary judgment against the plaintiff appropriate. See id. at 988. ___ ___ Mart nez articulates the standard to be applied in this ________ case to determine whether Hern ndez was acting under color of state law when he shot and killed Galletti. As we said in that case, [p]rivate violence -- even private violence engaged in by one who happens to work for the state -- has different legal ramifications than violence attributable to state action.  Mart nez, 54 F.3d at 985; see also Screws v. United States, 325 ________ ________ ______ _____________ U.S. 91, 111 (1945). Thus, whether a police officer is acting under color of state law turns on the nature and circumstances of the officer s conduct and the relationship of that conduct to the performance of his official duties. Mart nez, 54 F.3d at 986. ________  ____________________ We use the term on-shift rather than the term on-duty  because, as noted supra, Puerto Rico police officers are _____ considered to be on-duty twenty-four hours a day. -8- -8- The key determinant is whether the actor, at the time in question, purposes to act in an official capacity or to exercise official responsibilities pursuant to state law. Id.  ___ One relevant facet of this inquiry is whether the defendant has purported to act under color of state law or, in other words, has acted under pretense of law. See Screws v. ___ ______ United States, 325 U.S. 91, 111 (1945); Mart nez, 54 F.3d at 987. _____________ ________ Action occurs under pretense of law when an individual imbued with official authority purports to exercise that authority when actually acting wholly outside of it. See Mart nez, 54 F.3d at ___ ________ 986-87. However, as we have stated, [e]ven though acting under color of law  includes acting under pretense of law for purposes of a state action analysis, there can be no pretense if the challenged conduct is not related in some meaningful way either to the officer s governmental status or to the performance of his duties. Id. at 987. Therefore, it is not enough for an individual merely ___ to purport to exercise official power in order to trigger 1983 liability, but rather the individual must actually be engaged in the abuse of official power granted by the government. See West ___ ____ v. Atkins, 487 U.S. 42, 49 (1988); Mart nez, 54 F.3d at 986. ______ ________ The pivotal issue to be determined, then, is whether Hern ndez was engaged in purely personal pursuits or, conversely, whether he was acting under color of state law. Id. ___ at 987. In conducting this inquiry, we must assess Hern ndez  conduct in light of the totality of surrounding circumstances.  Id. In Mart nez, we identified several factors that are relevant ___ ________ -9- -9- to, but not necessarily determinative of, the issue, including: a police officer s garb; an officer s duty status, including the existence of a regulation providing that officers are on duty twenty-four hours a day; the officer s use of a service revolver; and, the location of the incident. See id. at 986, 987. ___ ___ The plaintiffs have resisted this formulation of the issue. At oral argument, the plaintiffs urged us to find that Hern ndez acted under color of state law because but for his official authority, he could never have done what he did. We recognize that some language in Mart nez might appear to support ________ such an expansive position. See 54 F.3d at 986 ( In general, ___ section 1983 is not implicated unless a state actor s conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved in that way but for the authority of his office. ). However, that statement merely articulates the minimum threshold that must be met for action to be considered as occurring under color of state law and does not set forth the specific test to be applied in determining whether a challenged act was committed under color of state law. In fact, in Mart nez ________ we rejected such a sweeping standard for 1983 liability. See, ___ e.g., id. at 987 ( [W]e must assess the nature of his conduct in ____ ___ light of the totality of surrounding circumstances . . . . ), 988 ( While a police officer s use of a state-issue weapon in the pursuit of private activities will have furthered the 1983 violation in a literal sense, a court needs additional indicia -10- -10- of state authority to conclude that the officer acted under color of state law. ) (citation omitted). We will not jettison our settled case law to embrace such a broad standard of liability here. The plaintiffs also asserted at oral argument that endorsing the result reached by the district court would bring us into conflict with the decisions of other circuits. Contrary to this assertion, the approach we articulated in Mart nez and ________ endorse here is consistent with the approach taken by other circuits that have considered the issue of whether the actions of police officers are taken under color of state law. See, e.g., ___ ____ David v. City and County of Denver, 101 F.3d 1344, 1351-54 (10th _____ _________________________ Cir. 1996); Barna v. City of Perth Amboy, 42 F.3d 809, 818-19 (3d _____ ___________________ Cir. 1994); Pitchell v. Callan, 13 F.3d 545, 547-49 (2d Cir. ________ ______ 1994); United States v. Tarpley, 945 F.2d 806, 808-09 (5th Cir. _____________ _______ Cir. 1991); Gibson v. City of Chicago, 910 F.2d 1510, 1516-19 ______ _______________ (7th 1990); Jones v. Gutschenritter, 909 F.2d 1208, 1211-12 (8th _____ ______________ Cir. 1990); Revene v. Charles County Comm rs, 882 F.2d 870, 872- ______ _______________________ 73 (4th Cir. 1989). While not explicitly adopting a totality of the circumstances test, these courts have examined the circumstances surrounding a challenged act to determine whether it was committed under color of state law. Given the intensely fact-specific nature of such analysis we find it unremarkable that none of the cases cited by the plaintiffs are so factually similar to this case as to persuade us to adopt the particular outcome the plaintiffs desire. -11- -11- 3. Application of the Standard 3. Application of the Standard With these preliminary matters aside, we now turn to the substance of this appeal -- the review de novo of the ________ district court s grant of summary judgment on the color-of-state- law issue. The plaintiffs point to the following factors to justify 1983 liability: the twenty-four hour a day regulation; Hern ndez repeated statements that he was a police officer; his use of his service revolver in the shooting; his statements to patrons that he was there to keep the peace and that he was handling the situation ; and his display of his police identification. These factors, they argue, raise a trialworthy issue as to whether Hern ndez was acting under color of state law on the night that he killed Galletti.  We agree that some of these factors weigh in favor of a finding of 1983 liability. In particular, Hern ndez comments to patrons that he was there to keep the peace and his display of his police identification might, viewed in isolation, support an inference that Hern ndez was acting under pretense of law by purporting to act in his official capacity. However, that conclusion was belied by the rest of Hern ndez behavior, especially his repeated assertions that he could do things such as look dirty at Galletti because he was a police officer. Mere statements by individuals that they are entitled to a special privilege because of their official status do not constitute action under color or pretense of state law if the asserted privilege lies clearly outside the scope of their -12- -12- official duties. Statements by Hern ndez that he could look dirty at Galletti because he was a police officer so clearly fell outside his official capacity that they did not constitute a reasonable pretense that he was acting as a police officer at the time.  Even more significantly, the final interchange between Galletti and Hern ndez prior to their going outside the bar dominates any characterization of the events of that evening. Both parties agree that at a point just before Galletti s death, he invited Hern ndez outside to settle their differences in a fight. Hern ndez accepted. From the time that the two left the bar until Hern ndez shot Galletti, Hern ndez made no further pretense that he was acting as a police officer. Whatever brief pretense Hern ndez may have made to be acting in his official capacity by showing his identification and stating that he was keeping the peace ended when the two agreed to fight it out. In Mart nez, we stated: ________ The campaign of terror that [the harassing officer] mounted was patently personal in nature, and [the victim] unquestionably realized as much; indeed, there was not the slightest indication that [the harassing officer s] conduct was undertaken pursuant to the authority of his office. Plainly, the fact that [the victim] walked away numerous times shows that he was not so intimidated  by [the harassing officer s] status as a policeman as to cause him to refrain from exercising his legal right[s].  Mart nez, 54 F.3d at 988 n.6 (quoting Jones v. Gutschenritter, ________ _____ ______________ 909 F.2d 1208, 1212 (8th Cir. 1990)). Here, any possibility that Galletti was intimidated by Hern ndez claims of official status -13- -13- is belied by the undisputed fact that Galletti invited Hern ndez to engage in a private brawl. Because Hern ndez made no further pretense of official action, there is not enough evidence in the record, even taken in the light most favorable to the plaintiffs, to support the inference that Hern ndez was acting under color of state law when he shot Galletti. As the district court concluded, Galletti s reaction in the face of Hern ndez openly hostile behavior towards him serves to buttress our conclusion that Hern ndez actions constituted private conduct outside the line of duty, and that the latter s status as an officer did not enter into his taunting of the decedent. The particular interaction between Hern ndez and Galletti was of a distinctly personal nature, and Galletti unquestionably realized as much. The fact that Galletti not only initiated the confrontation, but subsequently invited Hern ndez to fight it out outside the bar shows that he was not so intimidated by Hern ndez status as a policeman as to cause him to refrain from exercising his legal rights.  We agree, and this conclusion ends our inquiry.8 Conclusion Conclusion __________ For the reasons stated above, we affirm the judgment of affirm ______ the district court.  ____________________ The action-under-the-color-of-state-law issue being decided in favor of the defendants, the remainder of the plaintiffs claims unravel. With no underlying 1983 violation by Hern ndez, none of the other defendants can be found liable under the supervisory liability theory forwarded by the plaintiffs. -14- -14-