**1218**

Neil L. GRISWOLD, Plaintiff,

v.

NEW MADRID COUNTY GROUP PRAC-
TICE, INC., a/k/a Southeast Missouri
Health Network, Defendant.

No. 1:95CV00177 ERW.

United States District Court,
E.D. Missouri,
Southeastern Division.

June 19, 1997.

Neil L. Griswold, Kansas City, MO, pro se.

Christopher E. Lucas, Overland Park, KS,
for Plaintiff.

D. Keith Henson, Paule and Camazine,
Clayton, MO, for Defendant.

### MEMORANDUM AND ORDER

WEBBER, District Judge.

This matter is before the Court upon de-
fendant's motions for summary judgment
[document # 35] and to continue trial setting
[document # 38].

Plaintiff brings this employment discrimi-
nation action alleging that he was unlawfully
terminated from his position as a clinic physi-
cian by defendant New Madrid County
Group Practice, Inc., a/k/a Southeast Mis-
souri Health Network (Health Network).
Plaintiff claims Health Network terminated
him because of his age in violation of the Age
Discrimination in Employment Act of 1967
(ADEA), 29 U.S.C. § 621 *et seq.*, and that
defendant's actions violated plaintiff's due
process and equal protection rights under the
United States Constitution and the Missouri
Constitution in violation of 42 U.S.C. § 1983.

Defendant is a not-for-profit corporation
which provides services for the general pub-
lic as a health care provider. Defendant
operates two clinics staffed by physicians,
one in New Madrid, and the other in Sike-
ston, Missouri. Defendant receives approxi-
mately 50 percent of its funding from the

federal government, and the remaining from private donations and fees generated from health care services it provides.

Plaintiff was hired by the defendant as a clinical physician on December 10, 1990. Plaintiff was 58 years old at the time he was hired, and worked at defendant's New Madrid Clinic. Plaintiff and defendant had an employment contract that provided, in pertinent part: that its term shall be one year; that it is automatically renewable unless terminated or renegotiated; that it may be changed in writing; that either party may terminate the contract with 60 days written notice stating a cause; and that plaintiff shall obtain and maintain hospital privileges at an area hospital that could provide services for defendant's patients when needed.

In 1994, defendant employed three doctors, two of which had admitting privileges. In 1994, one doctor with admitting privileges left the employment of defendant's Sikeston, Missouri Clinic. Subsequently, one of the two remaining doctors was transferred to the Sikeston Clinic. Plaintiff was defendant's other remaining physician, and he remained at the New Madrid Clinic. On September 6, 1994, defendant gave plaintiff notice that he needed to obtain admitting privileges as required by his contract, especially since he was now the only physician on staff at the New Madrid Clinic. Plaintiff refused, and was terminated on the anniversary of his contract, December 10, 1994. Plaintiff claims the real reason he was terminated was his age, and defendant claims its stated reason was and is, legitimate and nondiscriminatory.

**A. Constitutional Claims**

Before the Court addresses plaintiff's ADEA claim, the constitutional claims will be addressed at a threshold level. Plaintiff's complaint, filed by his attorney when he was represented by counsel, states only the following in an attempt to proceed with his due process and equal protection claims.

14. That the action of defendant and each of them is without reason or basis and is so arbitrary that Plaintiff is hereby denied

due process of law; that the acts and conduct of Defendants are in derogation of Plaintiff's right to due process and equal protection laws as guaranteed by the fourteenth amendment to the Constitution of the United States and by Article I, Section 10 of the Missouri constitution and other applicable law as aforestated.

To prevail in an action under § 1983, a plaintiff must establish that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct was a violation of a right, privilege or immunity secured by the Constitution or laws of the United States. *Gentry v. Lee's Summit, Mo.,* 10 F.3d 1340, 1342 (8th Cir. 1993); *Jones v. Gutschenritter,* 909 F.2d 1208, 1211 (8th Cir.1990). "Under color of state law" requires that the deprivation be "fairly attributable to the State." *Jones,* 909 F.2d at 1211 (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 936, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982)).

The Supreme Court has identified several factors that are to be examined when determining whether state action has occurred. The factor most relevant to plaintiff's case is the "public function" aspect. Under the public function test, state action occurs when a private party performs a function or service that has been "'traditionally the exclusive prerogative of the State.'" *Rendell–Baker v. Kohn,* 457 U.S. 830, 842, 102 S.Ct. 2764, 2771–72, 73 L.Ed.2d 418 (1982) (citations omitted). Other factors to consider are the amount of funding the private party receives from the government, *id.* at 840, 102 S.Ct. at 2770–71, the degree to which the private party is governmentally regulated or coerced, *see Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), and whether or not the two entities have a "symbiotic relationship," *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).[1]

In *Rendell–Baker,* a former employee brought a wrongful discharge against his employer, a private school for students with

---

1. A symbiotic relationship is one in which the government has placed itself in a position of interdependence with a private entity such that the two must be considered "joint participants" in the activity. *See Dobyns v. E–Systems, Inc.,* 667 F.2d 1219, 1223 (5th Cir.1982).

special needs. Nearly all of the students in the school had been referred from state agencies or local schools. The public also funded a majority of the school's operating budget and the school was required to comply with state regulations. Additionally, plaintiff had been hired pursuant to a federal grant. *Rendell–Baker,* 457 U.S. at 833, 102 S.Ct. at 2767.

The Supreme Court held that the school did not engage in state action in discharging the plaintiff. Applying the public function test, the Court noted that merely performing a function that serves the public is not enough to create state action when the service is not the "exclusive prerogative of the State." *Id.* at 842, 102 S.Ct. at 2772 (citations omitted). It also found that although nearly all of the school's income came from public funds, the "receipt of public funds does not make the discharge decision[ ] [an act] of the State." *Id.* at 840, 102 S.Ct. at 2771. The Court analogized the school to private corporations whose "business depends primarily on contracts to build roads, bridges, dams, ships, or submarines for the government." *Id.* at 840–41, 102 S.Ct. at 2776. Furthermore, the Court was not persuaded that a "symbiotic relationship" existed between the school and the State, as "the school's fiscal relationship with the State [was] not different from that of many contractors performing services for the government." *Id.* at 843, 102 S.Ct. at 2772.

■ In this case, the plaintiff has made no attempt to show that the defendant was a state actor. As the forgoing analysis points out, even if the plaintiff had made such an attempt, the Court can only find that defendant is not a state actor. Defendant is not acting in an area that is the exclusive prerogative of the state. In fact, the health care industry, while partially publicly funded, is at the moment, and has always been privatized. Furthermore, the fiscal relationship, namely the fact that defendant is approximately 50% federally funded, is not such to establish a symbiotic relationship. Defendant is entitled

to summary judgment on plaintiff's federal constitutional claims.

■ As previously noted, plaintiff also alleges violations of the Missouri constitution in his complaint. The Court cannot determine from the complaint whether these allegations are asserted pursuant to 42 U.S.C. § 1983 or the Court's supplemental jurisdiction. Violations of state laws or a state constitution cannot by themselves constitute a viable claim under 42 U.S.C. § 1983. *See Ebmeier v. Stump,* 70 F.3d 1012, 1013 (8th Cir.1995). Therefore, to the extent plaintiff asserts state constitutional violations pursuant to § 1983, he fails to state a claim, and summary judgment will be granted in favor of defendant.

To the extent plaintiff asserts supplemental state law claims based on the Missouri constitution, the Court declines to exercise supplemental jurisdiction over the same. Under 28 U.S.C. § 1367(c)(3), district courts may decline jurisdiction over state claims as a "matter of discretion." *Hassett v. Lemay Bank and Trust Co.,* 851 F.2d 1127, 1130 (8th Cir.1988). Further, where "the federal claims are dismissed before trial ... the state claims should be dismissed as well." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Therefore, this Court declines jurisdiction over any state law claims and does not examine their merits.

## B. Discrimination Claim

The Court will analyze plaintiff's discrimination claims under the burden shifting analysis of McDonnell Douglas because there is no direct evidence of discriminatory intent. *See Holley v. Sanyo Mfg., Inc.,* 771 F.2d 1161, 1166 (8th Cir.1985). In an employment discrimination case under Title VII, the ADEA, or MHRA, summary judgment is appropriate unless plaintiff has competent evidence supporting each of the elements of his prima facie case.[2] *Hutson v. McDonnell*

---

**2.** Although *McDonnell Douglas* was a Title VII action, its burden-shifting framework also applies to ADEA and MHRA cases. *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir.1995); *Gaworski v. ITT Commercial Finance Corp.,* 17

F.3d 1104, 1108 n. 3 (8th Cir.), *cert. denied,* 513 U.S. 946, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994); *Rinehart v. City of Independence, Mo.,* 35 F.3d 1263, 1265 n. 1 (8th Cir.1994), *cert. denied,* 514

*Douglas Corp.*, 63 F.3d 771, 776 (8th Cir. 1995). If the prima facie case has been established, the employer has the burden of producing evidence that it discharged the plaintiff for a legitimate, nondiscriminatory reason, and the burden of production then shifts to the plaintiff to prove that the reason provided by the employer was a pretext for discrimination. *Nitschke v. McDonnell Douglas Corp.*, 68 F.3d 249, 251 (8th Cir. 1995). The ultimate burden of proving discriminatory intent remains on the plaintiff at all times. *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1332 (8th Cir.1996). At the summary judgment stage, the plaintiff must do more at the pretext stage than merely discredit defendants reason; it must present sufficient evidence upon which a jury could infer that the employer's reason was false, and that discrimination was the real reason. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515–16, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993).

█ To establish his prima facie case of discrimination, plaintiff must show that he is a member of the protected class, he was qualified to perform his job, he was fired or his contract was not renewed, and that a younger person was hired to take his place. *See Lowe v. J.B. Hunt Transport, Inc.*, 963 F.2d 173, 174 (8th Cir.1992). Although plaintiff has only stated that he has established a prima facie case of discrimination, without any specific facts to support this statement, the Court will assume for purposes of this motion that he has. However, even plaintiff admits that defendant has shifted the burden back to plaintiff by advancing a legitimate, non-discriminatory reason for his termination. Plaintiff refused to secure hospital privileges, so that he could admit patients of defendants in for care. Plaintiff must then rebut defendant's asserted justification directly, by showing the court that a discriminatory reason was the real motivation, or indirectly, by showing that defendant's reason is unworthy of belief. *Id.* Plaintiff admits that defendant has offered a legitimate, nondiscriminatory reason, and has offered

nothing to meet his burden and defeat summary judgment. It is at this point the Court's analysis ends, because plaintiff has failed to meet his burden at this stage. Defendant is entitled to summary judgment on plaintiff's ADEA claim.

Finally, the Court notes that plaintiff's response to defendant's motion is mostly a complaint about plaintiff's lack of counsel, his inadequate preparation, and his need for more time. The record clearly shows that plaintiff has had time to proceed with this case; that plaintiff has been the reason the case became stalled [3]; and he has failed to timely procure counsel as he informed the Court he would do. Ten months have passed since plaintiff's counsel withdrew from this case. Plaintiff's claim that he needs more time is meritless.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion. for summary judgment [document # 35] is **GRANTED**.

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED** as moot.

---

U.S. 1096, 115 S.Ct. 1822, 131 L.Ed.2d 744 (1995).

**3.** In fact, this Court was forced to order plaintiff to return to the Eastern District, where he chose

to bring this action, for his own deposition with defendant. It is further noted that plaintiff has performed no discovery in this action.