BRORBY, Senior Circuit Judge,
dissenting.
I dissent. I disagree with the majority’s conclusion the police officers are individually liable, and alternatively, they are not otherwise entitled to qualified immunity.
As the district court pointed out, the only federal constitutional issue in this case is raised in Count IV of the Third Amended Petition, where the Marcuses allege Mr. McCollum “acted in concert” and “jointly” with the police officers to effect a “common purpose,” in violation of the Fourth'and Fourteenth Amendments, for the purpose of depriving them of the *825 right to due process, equal protection and freedom from unreasonable searches. As pled, it is clear “joint” or “concerted” action is the gravamen of the Marcuses’ federal claim, and the district court concentrated its analysis accordingly, determining no state action occurred.
In determining if a state action arose, we have held that when a party relies on the “joint action” test, we look to such a test “to determine whether a private party acted under color of law in causing an alleged deprivation of federal rights.... ” See Sigmon v. CommunityCare HMO, Inc., 234 F.3d 1121, 1125 (10th Cir.2000) (citations omitted). Under such circumstances, “[t]his circuit has held that one way to prove willful joint action is to demonstrate that the public and private actors engaged in a conspiracy.” Id. at 1126. Under either a joint action or conspiracy § 1983 theory, we have said the plaintiff must prove “ ‘both public and private actors share a common, unconstitutional goal.’ ” Id. (quoting Anaya v. Crossroads Managed Care Sys., Inc., 195 F.3d 584, 596 (10th Cir.1999)).
In this case, even when viewed in a light more favorable to the Marcuses, the evidence does not show Mr. McCollum and the police officers participated in a joint action or conspiracy, or otherwise shared a common, unconstitutional goal. As the Marcuses admit and the district court ruled, the repossession[1] clearly started prior to the arrival of any police officer, and no evidence in the record shows'the police knew about the repossession in advance of Mr. McCollum’s arrival. Accordingly, I find unavailing the majority determination a resolution of disputed facts is necessary to determine if “Mr. McCollum and Officer Wilson were engaged in a joint endeavor.” -If, as the majority claims, the theory of “joint endeavor” is not the .gravamen of the complaint, and therefore, co-conspiracy is not an issue, it is unclear why they continue to assert a resolution of facts is necessary to decide if a “joint endeavor” existed.
Moreover, based on a fair reading of the appeal brief, I agree with the majority the Marcuses are abandoning their appeal against Mr. McCollum. However, by abandoning their appeal against Mr. McCollum, they■ are also abandoning the gravamen of their cause of action, because the theory of “joint” or “concerted” action, raised in their complaint, applies only to whether a “private” citizen’s actions-constitute a state action. See Sigmon, 234 F.3d at 1125. Thus, the majority inappropriately relies on the test of “joint endeavor”-in determining whether the police defendants may be liable for a § 1983 violation.
Alternatively, even if we bifurcate the Marcuses’ fourth cause of action and construe it purely as an action against the police officers, nothing in the record establishes either a Fourth Amendment violation for wrongful seizure or even excessive force, or a Fourteenth Amendment procedural due process violation for deprivation of property without prior notice or an opportunity to be heard. In examining these issues, I agree with the majority that “the circumstances must be ‘examined in their totality,’ ” but disagree with the significance given the officers’ actions.
First, the majority relies on the fact Mr. McCollum stopped and told Officer Wilson he intended to repossess the car and wanted him to be aware of the situation. But, as the district court pointed out, this “fact” was contained in a brief, rather than in an *826 affidavit or other evidentiary form, and therefore, it was not considered for summary judgment purposes. Even if this “fact” is considered, it does nothing more than show the police became informed about a situation which might, and did, deserve attention for peacekeeping purposes.
Next, the majority places much emphasis on the fact Mr. McCollum waved Officer Wilson over to the area where the repossession was occurring. However, it is undisputed this happened after the repossession was in progress and a heated dispute had already begun. No evidence in the record shows Officer Wilson responded for any other reason than to assist in peacekeeping. Certainly, a police officer should respond to someone who flags or waves him over, or otherwise motions for help, regardless of whether he knows in advance it may involve a repossession situation.
The majority opinion also either omits other significant undisputed facts or fails to give appropriate significance to them. For instance, it is undisputed that once Officer Wilson arrived in the driveway, he believed the situation was so heated it might get out of control.[2] Besides speaking loudly to Mr. McCollum, the Marcuses admit “there was bickering” and “arguing,” and the “taking of the automobile was not peaceful.” Mrs. Marcus also admits she bickered with Officer Wilson and possibly cursed at Mr. McCollum, although neither the police nor Mr. McCollum cursed at her. One reason Mr. McCollum sought police assistance included his concern for Nicholas’s safety as he repeatedly attempted to unhitch the car while the tow truck was preparing to and did move. Clearly, from the undisputed facts presented, Officer Wilson’s involvement in this case arose for the purpose of peacekeeping and preventing injury by or to the parties.
I also disagree with the majority’s conclusion summary judgment is inappropriate because it “may be pertinent” to determine “whether Mr. McCollum’s actions provoked a breach of the peace.” Certainly, such an inquiry is unnecessary. Our only inquiry rests on the reason for the police involvement, which in this case, clearly arose for the purpose of peacekeeping, regardless of who provoked a breach of peace.
As to the other police officers, they arrived solely because of the dispatch call Officer Wilson made before he went to the Marcuses’ driveway. The majority suggests the objective evidence raises a fact issue as to whether they were “neutral in them efforts to keep the peace.” I disagree. Mrs. Marcus stated these other officers arrived only after she retreated to the porch, and they acted “neutral,” did not appear to know what was going on, took her report, and after learning of the situation, advised her to go to small claims court. These actions do not constitute a wrongful attempt to facilitate the repossession or prevent the Marcuses from resisting it. As to the majority’s suggestion these officers were as culpable as Officer Wilson because they advised Mrs. Marcus to shut her mouth or risk going to jail, the district court correctly pointed out Mrs. Marcus did not clearly identify in her deposition, or elsewhere, which officer said this, or to whom the statement should be attributed. These additional officers should not stand trial for a statement which has not been attributed to them. Moreover, it appears any threat of arrest was directed at Mrs. Marcus for breach of the peace, and not, as the majority suggests, for resisting repossession.
*827 Even if attributable to any of the officers, the majority places too much weight on the statement that Mrs. Marcus should keep her mouth shut or she could go to jail that day, or Officer Wilson’s statement that if the situation escalated “someone” would go to jail. If, as Mrs. Marcus admits, she was using loud, argumentative language, and possibly cursing, which contributed to an unpeaceful situation, it was not unreasonable for a police officer to caution her, as did the police in Menchaca, who informed the plaintiff he could be arrested if he continued to use loud and abusive language to create a breach of peace during a repossession situation. See Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 510, 513 (5th Cir.), cert. denied, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980). See also Barrett v. Harwood, 189 F.3d 297, 303 (2d Cir.1999) (holding officer’s actions in repossession situation, where he warned the plaintiff he would go in the back seat of his patrol car if he started trouble, amounted to no more than carrying out his duty to prevent violence in the event of a breach of peace), cert. denied, 530 U.S. 1262, 120 S.Ct. 2719, 147 L.Ed.2d 984 (2000). To hold otherwise would chill future police action in attempting to diffuse situations before they escalate.
I find Menchaca instructive and the majority’s attempts to distinguish it unconvincing. While the majority admits the facts in Menchaca resemble those in the instant case, the opinion suggests Mencha-ca is inapplicable because it addresses the issue of subject matter jurisdiction. However, the Menchaca court, like the district court here, determined from evidence offered that a state action did not occur. See 613 F.2d at 512-13. As the Eighth Circuit explained, the determinative issue in ascertaining either subject matter jurisdiction or a constitutional violation under § 1983 is the same — i.e., did a state action or action under the color of state law occur? See Jones v. Gutschenritter, 909 F.2d 1208, 1210 (8th Cir.1990). For this reason, many of the cases relied on by the majority either cite to or rely on Mencha-ca, even though those cases also do not involve the issue of subject matter jurisdiction, but turn on § 1983 liability for a state action.[3] On appeal, the Marcuses continue to assert this is a state action, and for this reason alone, Menchaca is instructive.
In addition, the majority distinguishes Menchaca on the facts because the repossession in that case occurred on a street and not, as here, on a private driveway, which the majority contends involves the additional issue of trespass. While the Marcuses brought a cause of action for trespass against the police officers, the district court dismissed it for lack of jurisdiction, and the Marcuses have not raised it on appeal. Moreover, it is clear a policeman’s “trespass to property, negligent or intentional, is a common law tort; it does not infringe the federal constitution,” and thereby does not give rise to a § 1983 action. Wise v. Bravo, 666 F.2d 1328, 1335 (10th Cir.1981). Even under the context of the Fourth Amendment, we have determined police may come on private property to conduct an investigation if their *828 movements are restricted to places visitors could be expected to go, including walkways, driveways and porches. See United States v. Hatfield, 333 F.3d 1189, 1194 (10th Cir.2003). While the majority contends the place of repossession is a significant factor in determining if a breach of peace occurred, in this case, the question is not whether a breach of peace ensued, but rather, whether the officers somehow went beyond their peacekeeping duties to improperly assist with the repossession. Accordingly, the district court properly dismissed the trespass issue in this case, and it should not be a factor, either in this appeal, or for the purpose of distinguishing other cases from the one here.[4]
As to the legality of the repossession, the majority points out the officers may have looked at Mr. McCollum’s “piece of paper,” but they did not ask for further documentation and should have known of the illegality of the repossession. First, the Marcuses fail to provide the mystery “piece of paper” for our review on appeal. Second, even if the officers did not ask for further documentation or verify the vehicle identification number, this is a self-help repossession case, and the police clearly arrived for the purpose of standing by to keep the peace, rather than for the purpose of determining rightful ownership of the vehicle. The majority has not pointed to any statute or case which establishes the police, in a self-help repossession situation, have a duty to determine rightful ownership of the vehicle. In fact, to have the police do so could actually violate procedural due process. See, e.g., Abbott, 164 F.3d at 149 (explaining Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), stands, in part, for “the principle that it is not for law enforcement officers to decide who is entitled to possession of property”).
Next, as the district court noted, no evidence shows the officers knew the repossession was illegal. In fact, in this case, the ownership of the vehicle was still in dispute at the time of the district court’s summary judgment decision.[5] If the legality of the repossession remains in dispute throughout litigation, how then could the police be expected to make such a determination in a matter of minutes? Such a court-mandated requirement would place an untenable burden on police officers in self-help repossessions. The majority’s reliance on Oklahoma law, which allows a self-help repossessor to take possession of the property only if no breach of peace occurs is unpersuasive. It applies to the private party repossessor and does not place a duty on officers to stop a self-help repossession. As the majority suggests, officers should not conduct a “curbside courtroom.” Moreover, the majority’s suggestion a volatile situation could be diffused by simply “directing] both parties to seek a judicial determination,” does not account for the realities of the world, when angry parties confront each other and officers must prevent an escalating breach of peace or prevent them from acting violently-
Finally, the majority relies on the Mar-cuses’ statements that Officer Wilson poked Nicholas Marcus several times in the chest with sufficient force to knock him backwards, for the purpose of establishing a § 1983 violation. This is contested, and therefore, according to the majority, raises *829 a material issue of dispute. The majority further contends the alleged “poking” action, together with verbal threats of going to jail, are objective evidence raising issues of fact as to whether the police officers 1) acted neutrally; 2) credited Mr. McCol-lum’s contentions over the Marcuses’; and 3) assisted with the repossession. However, even if we view the evidence in a light most favorable to the Marcuses, as did the district court, and consider the “poking” allegation true, it does not establish a procedural due process or other constitutional violation merely because it occurred in the context of a repossession.
Specifically, in this case, it is undisputed Officer Wilson told the parties this was a civil matter in which he could not get involved, and he was there to keep the peace and make sure no- one would get hurt. Therefore, it is clear he sufficiently communicated to the parties the police could neither help with nor terminate the repossession. It follows then that the police officers’ actions, either in poking Mr. Marcus or warning of the possibility of going to jail for breaching the peace, were plainly for the purpose of keeping the peace, and not to aid the repossession. See, e.g., Barrett, 189 F.3d at 303 (holding officer’s warnings applied to officer’s duty to prevent violence in the event of a breach of peace, rather than a state action to facilitate the repossession). Under the' circumstances in this case, the actions of Officer Wilson, who clearly believed he faced a breach of peace situation which was escalating, should be viewed in that context, and not as a means of facilitating a repossession.
Because the Marcuses claim a Fourth Amendment violation, it is reasonable for us to look at the police officers’ actions in the context of an unreasonable seizure or excessive force. In so doing, we look at the amount of force used in relationship to the need presented, the extent of the injury inflicted, and the motives of the officer, to determine whether the official abused his power to the point it shocks the conscience and is appropriate for redress under § 1983. See Wise, 666 F.2d at 1333— 34. If we look at Officer Wilson’s actions solely in conjunction with an attempt to keep the peace in a situation he undisput-edly believed was escalating, poking Nicholas in a way which did not inflict injury is patently insufficient to shock the conscience and warrant § 1983 relief. See, e.g., Dale v. Janklow, 828 F.2d 481, 484-85 (8th Cir.1987) (holding officer, who struck plaintiff, reasonably concluded plaintiff would use deadly force to prevent repossession of cattle).
The majority also places great emphasis on the Marcuses’ subjective view the police officers’ actions dissuaded them from continuing their resistance to the repossession. Admittedly, at least two other circuits have relied on the subjective view of the plaintiff during a repossession situation in determining whether a state action occurred. See, e.g., Jones, 909 F.2d at 1212 (considering intimidation factor because of police presence); Booker, 776 F.2d at 273, 274 (considering plaintiffs subjective view, stating officer’s arrival with the repossessor gave situation a “cachet of legality” establishing state action). However, a plaintiffs subjective view is not relevant in the context of the qualified immunity defense, even under a summary judgment standard of review. Rather, even when viewing the evidence in favor of the nonmoving party, we look at the objective reasonableness of the officers’ actions. .See Lawmaster v. Ward, 125 F.3d 1341, 1346-47, 1350-51 (10th Cir.1997).
Under the' Fourth Amendment, ’ the “reasonableness” inquiry “is an objective one: the question is whether the officers’ actions are ‘objectively reasonable’ in light *830 of the facts and circumstances confronting them, without regard to their underlying intent or motivation.” Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Specifically, in cases of seizure of property, “[t]he affirmative defense of qualified immunity provides that: ‘government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.’ ” Haverstick Enter., Inc. v. Fin. Fed. Credit, Inc., 32 F.3d 989, 994 (6th Cir.1994) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). If, as here, the officer’s conduct fit into his peacekeeping duties, rather than for the purpose of assisting in the repossession, his actions are objectively reasonable. See, e.g., Haver-stick at 995-96 (recognizing qualified immunity for summary judgment purposes where officer may have reasonably concluded his actions fit into the category of keeping the peace, rather than conduct to facilitate repossession); Booker, 776 F.2d at 274 (affording qualified immunity for summary judgment purposes where officer alleged good faith belief in the legality of his actions, even though he arrived with the repossessor, which intimidated the plaintiff and gave the repossession the “cachet of legality”); Harris, 664 F.2d at 1128-30 (holding qualified immunity protects officer monitoring self-help repossession for peacekeeping purposes where a reasonable officer in his position would not have known his actions constituted invalid participation in the taking).
For the reasons previously stated, the Marcuses have not shown, under their qualified immunity burden of proof, that the officers’ actions were not objectively reasonable, in either poking Mr. Marcus or otherwise threatening the Marcuses with arrest if they did not cease using loud, argumentative, or otherwise abusive language. Because the police officers’ actions were objectively reasonable for the purpose of keeping the peace, qualified immunity should protect them.
To hold otherwise would place officers in an unreasonable, impracticable, “Catch-22” position of watching a self-help repossession for peacekeeping purposes, but not taking any action to diffuse the situation to prevent the private parties from injuring each other. The basic purpose of qualified immunity “is to spare individual officials the burdens and uncertainties of standing trial in those instances where their conduct would strike an objective observer as falling within the range of reasonable judgment.” Gooden v. Howard County, Md., 954 F.2d 960, 965 (4th Cir.1992) (holding “[i]n cases where officers are hurriedly called to the scene of a disturbance, the reasonableness of their response must be gauged against the reasonableness of their perceptions, not against what may later be found to have actually taken place.”). To advance to trial for § 1983 liability under the circumstances in this case, I believe, would defy the underlying reason for the defense of qualified immunity.
For these reasons, I would affirm the district court’s decision to grant the Defendants’ summary judgment motion and dismiss the Plaintiffs’ § 1983 action.

. In their brief, the Marcuses contend this is not a repossession situation, and refer to it as a "taking” or "trespass” by the defendants. I agree with the majority’s characterization of it as a "self-help repossession.”

. The Marcuses do not dispute this, as they admit not knowing what the officer believed.

. See Barrett, 189 F.3d at 302; Abbott v. Latshaw, 164 F.3d 141, 147 (3d Cir.1998); Cofield v. Randolph County Comm’n, 90 F.3d 468, 471 (11th Cir. 1996); Harris v. City of Roseburg, 664 F.2d 1121, 1126 (9th Cir.1981); Jones, 909 F.2d at 1211; Booker v. City of Atlanta, 776 F.2d 272, 273-74 (11th Cir.1985). Ironically, at least three of the cases on which the majority relies are similar to Menchaca because they involve the issue of subject matter jurisdiction, but are not relegated by the majority to the same ''distinguishable” status as Menchaca. See Barrett, 189 F.3d at 300; Jones, 909 F.2d at 1210; Booker, 776 F.2d at 273.

. Equally unavailing is the majority’s attempt to distinguish Menchaca because in that case the district court was afforded the opportunity to observe the credibility of the witnesses. This difference is irrelevant because in this case all the. evidence must be viewed in the Marcuses' favor as the nonmoving party.

. Even on appeal, it remains unclear whether ownership of the vehicle is resolved.