**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 30 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

MIKE MARCUS; DIANA MARCUS;
NICHOLAS SHIEL, a.k.a. Nicholas
Marcus, a minor child, by and through
his mother Diana Marcus,

       Plaintiffs-Appellants,

v.

CARL MCCOLLUM, SWOPE 24 HR.
WRECKER SERVICE, LLC, an
Oklahoma Limited Liability Company;
JENNIFER THOMAS; MASON
WILSON; DAVID POWELL; KENT
BORCHERDING,

       Defendants-Appellees,

and

CITY OF SHAWNEE, OKLAHOMA,
a Municipal corporation,

       Defendant.

No. 03-6148

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. CIV-02-1267-F)**

---

Submitted on the briefs:

Joseph E. McKimmey, Shawnee, Oklahoma, for Plaintiffs-Appellants.

David W. Kirk, Dan M. Peters, Carter & Kirk, P.C., Oklahoma City, Oklahoma, for Defendants-Appellees.

_____

Before **SEYMOUR,** Circuit Judge, **BRORBY,** Senior Circuit Judge, and **HENRY**, Circuit Judge.

_____

**SEYMOUR**, Circuit Judge.

_____

Carl McCollum, a creditor of plaintiff Diana Marcus, towed away an automobile parked in plaintiffs' driveway. Plaintiffs filed this lawsuit asserting a civil rights claim under 42 U.S.C. § 1983 against Mr. McCollum, the tow truck service, and police officers present during the incident. The complaint alleges violations of plaintiffs' Fourth Amendment right to freedom from unreasonable search and seizure and Fourteenth Amendment right to procedural due process, as well as several state tort claims.

The district court entered summary judgment in favor of the police officers on plaintiffs' federal civil rights claim based on its conclusion that the officers' conduct did not amount to state action as required for a viable § 1983 claim and that, in any event, the officers were entitled to qualified immunity. We reverse

based on our determination that disputed, material facts preclude both entry of summary judgment and the grant of qualified immunity.[1]

## I.

Mrs. Marcus borrowed money from Mr. McCollum in December 2001 and gave him the title to an automobile in January 2002. On February 22, 2002, Mr. McCollum, accompanied by a driver from Swope 24-Hr. Wrecker Service, L.L.C., approached the Marcus home and noticed defendant Mason Wilson, an on-duty Shawnee police officer, parked across the street in a school parking lot. It is undisputed that Mr. McCollum told Officer Wilson he was going to repossess a car and wanted Officer Wilson to be aware of the situation.[2] Mr. McCollum did not have the title to a car with him, but he had a "piece of paper" with a vehicle identification number (VIN) matching that of a 1978 Pontiac Firebird. Aplt. app., tab 4(D) at 16.

Mr. McCollum and the tow truck operator then began the process of towing the Pontiac from the Marcuses' driveway. According to plaintiffs, the Pontiac

---

[1]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[2]     The dissent states that there is no evidentiary support in the record for this statement. Dissent, slip op. at 3-4. However, *defendants* made this assertion in their brief in support of summary judgment. Aplt. app., tab 4 at 1.

was owned by Mrs. Marcus' husband, plaintiff Mike Marcus, and was not the collateral securing Mr. McCollum's loan. Mr. Marcus was not home, but Mrs. Marcus and her minor son, plaintiff Nicholas Shiel, were there. They noticed Mr. McCollum's activities, ran outside, and began arguing loudly with him. They told him he had no right to the Pontiac, and that he had title to "a car in Bethel." *Id.*

Officer Wilson called for back-up assistance in the developing dispute and drove his patrol car over to the Marcuses' driveway. It is disputed whether Officer Wilson was alerted by the confrontation and drove over on his own initiative or did so because Mr. McCollum beckoned him. *See id.*, tab 4(C) at 2 (Officer Wilson's affidavit, stating he decided to step in when he observed a heated argument); tab 4(D) at 16 (Mr. McCollum's deposition testimony, stating he waved for Officer Wilson to come over); tab 6(A) at 20 (Mrs. Marcus' deposition testimony, stating that Mr. McCollum raised his hand and Officer Wilson came over). Officer Wilson was soon joined by three other officers, defendants Jennifer Thomas, David Powell, and Kent Borcherding.

Mrs. Marcus and Nicholas asserted to the officers that Mr. McCollum had no legal interest in the automobile. Although the officers may have looked at Mr. McCollum's "piece of paper," they did not ask for further documentation of his ownership interest. *Id.*, tab 4(D) at 16. Plaintiffs continued arguing with Mr.

McCollum and also made several attempts to unhook the car from the wrecker. At some point, according to plaintiffs, Officer Wilson poked Nicholas "several times in the chest with sufficient force to knock [him] backwards." *Id.*, tab 6(G) at 2.

Although the officers stated that repossession was a civil matter in which the police could not be involved, they also told Mrs. Marcus and Nicholas to stop their interference, advising "let them do what they're going to do and take it up in small claims court." *Id.,* tab 6(A) at 21. Mrs. Marcus and Nicholas contend Officer Wilson stated that if the situation escalated, "someone" would be going to jail. They claim that an officer told them "for our best bet, we should keep our mouth shut, go back in the house or we would indeed go to jail that day." *Id.* at 22. Because they took these statements as threats directed toward them, they followed the officers' instructions and allowed the car to be towed away. *Id.* at 24. Defendants assert that no one was threatened with force or arrest. *Id.*, tab 4(C) at 3. Officer Wilson stayed until the wrecker drove away; the other officers left when the situation seemed to be under control.

In the wake of the incident, the Marcus family brought this action in state court against Mr. McCollum, the wrecker service, the police officers, and the City of Shawnee (the City). In their federal civil rights claim arising under 42 U.S.C. § 1983, plaintiffs asserted that the police officers "entered upon the

-5-

property of the Plaintiff and aided a certain Carl McCollum and the employee of SWOPE 24 HR. WRECKER SERVICE, L.L.C., An Oklahoma Limited Liability Company, in the unlawful taking of a certain 1978 Pontiac Firebird Automobile belonging to the Plaintiff, MIKE MARCUS," *id.*, tab 1 at 3, and "used the threat of force and threats to have DIANA MARCUS and her son NICHOLAS SHIEL, a/k/a NICHOLAS MARCUS, taken into custody if they did not yield to the authority of the police in the taking of said property," *id.*; all in violation of their Fourth and Fourteenth Amendment rights to due process and freedom from unreasonable search and seizure, *id.* at 5.

The City removed the case to federal district court and defendants moved for summary judgment. The district court concluded the officers' conduct did not amount to the state action required for a viable § 1983 claim and, alternatively, that the officers were entitled to qualified immunity. The court entered summary judgment in favor of the police officers and Mr. McCollum on the § 1983 claim and remanded the remainder of the case to state court. In this appeal, plaintiffs continue to pursue their § 1983 claim against the police officers.[3]

---

[3] Plaintiffs emphasize that they have not made a civil rights claim against the City and, therefore, the City is not a party to this appeal. Aplt. br. at 3. Moreover, plaintiffs' briefs do not contest the district court's *sua sponte* entry of summary judgment in favor of Mr. McCollum. We thus do not address whether Mr. McCollum, a private defendant, may be classified as a state actor. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (stating
(continued...)

-6-

II.

A § 1983 claim must be based on a right secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. Plaintiffs' asserted constitutional interests are well-established. Under the Fourteenth Amendment, procedural due process requires notice and a pre-deprivation hearing before property interests are negatively affected by governmental actors. *See Fuentes v. Shevin*, 407 U.S. 67,

---

(...continued)

appellant's failure to raise an issue in his opening brief waives the point); Fed. R. App. P. 28(a)(9)(A) (providing appellant's opening brief must contain "appellant's contentions and the reasons for them").

Nevertheless, we disagree with the dissent's characterization of plaintiffs' decision to omit Mr. McCollum from this appeal as an "abandon[ment of] the gravamen of their cause of action." Dissent at 3. The gravamen of plaintiff's cause of action, contrary to the assertions of the dissent, is that the police interfered with the efforts of the plaintiffs to protect their property interests by aiding Mr. McCollum and by threatening to take Mrs. Marcus and her son into custody. It is not necessary for plaintiffs to demonstrate that Mr. McCollum and the officers were co-conspirators as a matter of law. It is enough to show that the police participated, jointly or otherwise, to the extent that the alleged unlawful repossession assumed the character of state action. *See, e.g.*, *Booker v. City of Atlanta*, 776 F.2d 272, 274 (11th Cir. 1985) (officer's arrival at scene with repossessor gave repossession a cachet of legality which could constitute police intervention sufficient to establish state action); *Greco v. Guss*, 775 F.2d 161, 168 (7th Cir. 1985) (deputy's instruction to debtor that seizure was legal and that he should leave his personal belongings constitutes state action); *Howerton v. Gabica*, 708 F.2d 380, 384 (9th Cir. 1983) (police officers' assistance to landlord in effecting a legally deficient eviction notice put weight of state behind landlord's private decision to evict). "Even if unintended," the effect of intimidating the debtor into not exercising his right to resist, "could constitute police 'intervention and aid' sufficient to establish state action." *Booker*, 776 F.2d at 274. The key inquiry, of course, is whether the officer's conduct was designed to keep the peace or to aid in the repossession.

-7-

80-82 (1972). The Fourth Amendment prohibition against unreasonable search and seizure is implicated "when 'there is some meaningful interference with an individual's possessory interests in [his] property.'" *Soldal v. Cook County*, 506 U.S. 56, 61 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

The language of the Fourteenth Amendment establishes "an 'essential dichotomy' between governmental action, which is subject to scrutiny under the Fourteenth Amendment, and private conduct, which 'however discriminatory or wrongful,' is not subject to the Fourteenth Amendment prohibitions." *Gallagher v. Neil Young Freedom Concert,* 49 F.3d 1442, 1446 (10th Cir. 1995) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349 (1974)) (further quotation omitted). Governmental defendants

> normally can be held responsible for a private decision only when [they have] exercised coercive power or [have] provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State. Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment.

*Blum v. Yaretsky*, 457 U.S. 991, 1004-05 (1982) (citations omitted).

Although we have not examined the state-action issue in the context of police officer involvement with a private party's repossession of property, several

other circuits have.[4]  These circuits are in agreement as to the law:  officers are not state actors during a private repossession if they act only to keep the peace, but they cross the line if they affirmatively intervene to aid the repossessor.  The Second Circuit has articulated this continuum as follows:  "[w]hen an officer begins to take a more active hand in the repossession, and as such involvement becomes increasingly critical, a point may be reached at which police assistance at the scene of a private repossession may cause the repossession to take on the character of state action."  *Barrett v. Harwood*, 189 F.3d 297, 302 (2d Cir. 1999).

This view is echoed among the circuits.  *See, e.g., Cofield v. Randolph County Comm'n*, 90 F.3d 468, 471 (11th Cir. 1996) ("state action might be present if an officer were to facilitate a repossession"); *Harris v. City of Roseburg*, 664 F.2d 1121, 1127 (9th Cir. 1981) ("police intervention and aid in the repossession does constitute state action"); *United States v. Coleman*, 628 F.2d 961, 964 & n.1 (6th Cir. 1980) (police compulsion, encouragement, direction, assistance, or affirmative participation would constitute state action);

---

[4]      In an analogous situation, a panel of this court has held that a constitutional violation occurs "[w]hen a government official affirmatively facilitates or encourages an unreasonable search performed by a private person."  *Specht v. Jensen*, 832 F.2d 1516, 1523 (10th Cir. 1987), *reh'g granted on other grounds and judgment, but not opinion, vacated on other grounds*, 853 F.2d 805 (10th Cir. 1988).  In *Specht*, the panel determined that plaintiffs' evidence that a police officer lent his authority to an illegal entry "was sufficient to permit the jury to find that he was more than a mere peace-keeping bystander."  *Id.* at 1524.

*Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 513 (5th Cir. 1980) ("police intervention and aid in this repossession . . . would constitute state action").

This area of the law is particularly fact-sensitive, so the circumstances must be "examined in their totality." *Howerton v. Gabica*, 708 F.2d 380, 384 (9th Cir. 1983). If the evidence showed, for example, that an "officer came on the scene at the request of the repossessor and said to the debtor, 'don't interfere with this repossession,' or 'you know you're not the rightful owner of [the property],'" an officer might be liable. *Barrett*, 189 F.3d at 303; *see also Greco v. Guss,* 775 F.2d 161, 168 (7th Cir. 1985) (finding state action where deputy told debtor that the seizure was legal); *Harris*, 664 F.2d at 1127 (finding state action where debtor was told to stop interfering or he would go to jail; debtor would have prevented the repossession if police had not been there). An officer's "arrival with the repossessor" could give "the repossession a cachet of legality" and have "the effect of intimidating [the debtor] into not exercising his right to resist, thus facilitating the repossession." *Booker v. City of Atlanta*, 776 F.2d 272, 274 (11th Cir. 1985). "Even if unintended, such an effect could constitute police 'intervention and aid' sufficient to establish state action." *Id.* (quoting *Menchaca*, 613 F.2d at 513).

Other factors courts take into consideration include intervening at more than one step, *Howerton*, 708 F.2d at 385; failing to depart before completion of

the repossession, *Jones v. Gutschenritter,* 909 F.2d 1208, 1211-12 (8th Cir. 1990); standing in close proximity to the creditor, *id.*; and unreasonably recognizing the documentation of one party over another, *Abbott v. Latshaw*, 164 F.3d 141, 149 (3d Cir. 1998). To repeat, the overarching lesson of the case law is that officers may act to diffuse a volatile situation, but may not aid the repossessor in such a way that the repossession would not have occurred but for their assistance.

As is typical of these cases, a self-help repossessor in Oklahoma may take possession of property without judicial process only if he or she has a security interest in the targeted property and no breach of the peace takes place. *See* OKLA. STAT. tit. 12A, § 1-9-609. This rule derives from the Uniform Commercial Code, which states "[a]fter default, a secured party . . . may take possession of the collateral . . . (1) pursuant to judicial process; or (2) without judicial process, *if it proceeds without breach of the peace*." U.C.C. § 9-609 (*formerly* U.C.C. § 9-503) (emphasis added);[5] *see also Helfinstine v. Martin*, 561 P.2d 951, 954 (Okla.

---

[5] The states have incorporated the "without breach of the peace" limitation into their statutory schemes. *See* U.C.C. Rev. Art. 9, 3 U.L.A. 5, 14-18, notes on adoption of revised article 9 (2002) (listing the fifty-two states and territories which have enacted revised article 9, including § 9-609). Several federal courts have applied the principles underlying § 9-609 in analyzing the extent of state participation in a creditor's repossession activities. *See Cofield v. Randolph County Comm'n*, 90 F.3d 468, 471 (11th Cir. 1996); *Harris v. City of Roseburg*, 664 F.2d 1121, 1125-26 (9th Cir. 1981); *United States v. Coleman*, 628 F.2d 961, 962 (6th Cir. 1980); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 515 (5th Cir. 1980) (in dissent).

1977) (recognizing the current statutory "right to peaceful self-help repossession of property . . . has roots deep in the common law").

The repossessor's "greatest obstacle to self-help repossession is the requirement that repossession must be accomplished without a breach of peace." Roger D. Billings, Jr., *Handling Automobile Warranty and Repossession Cases* § 11:24 (2d ed. 2003). The Oklahoma Supreme Court instructs that "[t]he circumstances of each case must be considered in determining whether or not a 'breach of peace' has taken place, and the jury is the judge of the facts." *Ben Cooper Motor Co. v. Amey,* 287 P. 1017, 1018 (Okla. 1930). The plaintiff's resistance to the taking of his property need not be "strong." *Id.* at 1018-19. "The general rule is that a debtor's request for the financer to leave the car alone must be obeyed." Billings at § 11:38. "[E]ven polite repossessors breach the peace if they meet resistance from the debtor." *Id.* at § 11:36. If a breach of peace occurs, self-help repossession is statutorily precluded. *See, e.g.*, *DeMary v. Reiker*, 695 A.2d 294, 301 (N.J. Super. 1997) (due to breach of the peace, secured party's repossession without judicial process unlawful); *Ivy v. General Motors Acceptance Corp.*, 612 So. 2d 1108, 1110 (Miss. 1992) (same); *Deavers v. Standridge*, 242 S.E.2d 331, 333 (Ga. App. 1978) (same); *Henderson v. Security Nat. Bank*, 140 Cal. Rptr. 388, 391 (1977) (same); *Nicolson's Mobile Home Sales,*

-12-

*Inc. v. Schramm*, 330 N.E.2d 785, 790 (Ind. App. 1975) (same); *Stone Mach. Co. v. Kessler*, 463 P.2d 651, 654 (Wash. 1970) (same).

It stands to reason that police should not weigh in on the side of the repossessor and assist an illegal repossession. To diffuse a volatile situation while ensuring a lack of state action, officers could direct both parties to seek a judicial determination. A "curbside courtroom," in which officers decide "who was entitled to possession, is precisely the situation and deprivation of rights to be avoided." *Abbott*, 164 F.3d at 149.[6]

### III.

Whether defendants are entitled to summary judgment is a question of law we review *de novo*. *Croy v. Cobe Labs., Inc.*, 345 F.3d 1199, 1201 (10th Cir. 2003). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, "we view the evidence and draw reasonable inferences

---

[6] In other words, we agree with the dissent that a police officer should not attempt to resolve a heated ownership dispute on the scene. Under such circumstances, the creditor must seek relief through judicial process. *See* Okla. Stat. tit. 12A, § 1-9-609(b).

-13-

therefrom facts in the light most favorable to the nonmoving party." *Fisher v. Okla. Health Care Auth.,* 335 F.3d 1175, 1180 (10th Cir. 2003). At the summary judgment stage, "our role is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate fact-finder, to sustain [the] claim." *Foster v. AlliedSignal, Inc.*, 293 F.3d 1187, 1195 (10th Cir. 2002). The question before us, therefore, is whether the undisputed facts show that the officers fulfilled their responsibility to keep the peace without aiding Mr. McCollum's private repossession. *See Booker*, 776 F.2d at 274.

At the time of the seizure at issue, Mr. McCollum's security interest in the Pontiac Firebird parked in the Marcuses' driveway was disputed. Mrs. Marcus and Nicholas assert they told the officers they disagreed with Mr. McCollum's right to take the Firebird and that the VIN on the Firebird did not match the VIN indicated in the title Mrs. Marcus had given to Mr. McCollum. From the summary judgment filings, it is difficult to determine the extent of the officers' inquiry into the legality of Mr. McCollum's claims. There is evidence, however, that they credited Mr. McCollum's contentions over those of plaintiffs. As the district court stated in its order, "the lawfulness of the repossession is an issue which remains to this day." Aplt. app., tab 7 at 6.

-14-

There are also some differences between the parties' versions of the facts relating to the manner in which Officer Wilson was alerted to the situation.[7] A resolution of these facts may be pertinent to whether Mr. McCollum's actions provoked a breach of the peace and whether a factfinder could infer that Mr. McCollum and Officer Wilson were engaged in a joint endeavor. Additionally, there is evidence that the officers repeatedly told Nicholas and Mrs. Marcus to allow Mr. McCollum to take possession of the automobile and threatened them with arrest if they continued to resist. Officer Wilson remained at the plaintiffs' residence until the towing was completed, and he may also have forcibly poked Nicholas.

For legal authority supporting the entry of summary judgment, defendants rely heavily upon *Menchaca*, a case from the Fifth Circuit in which the facts recited by the majority resemble the instant case: repossessors came to take a vehicle, the owners voiced their objection, the police came to "check out the disturbance" and keep the peace, and they warned the owner he would be arrested if he continued to use loud and abusive language. *See Menchaca*, 613 F.2d at

---

[7] The dissent points out a lack of evidence indicating that Officer Wilson was aware of the repossession before Mr. McCollum's arrival and, using that slim fact as a springboard, concludes that the officers and Mr. McCollum were not engaged in a joint endeavor. Dissent at 2; *see also id.* at 3-4. The officers' prior knowledge of an intended repossession, however, is not a cornerstone of plaintiffs' case. What matters is how the officers conducted themselves at the time of the intervention.

510. Over a dissent, the court concluded the state action question was central to the district court's jurisdiction to hear the case. Ultimately, the appellate court found no state action and affirmed the district court's dismissal for lack of subject matter jurisdiction.

*Menchaca* is distinguishable both procedurally and factually. First, the car in *Menchaca* was parked on a public street, so there was no trespass issue. Next, there was no dispute in *Menchaca* that the repossessor was a secured creditor of the disputed property with the right to repossession upon default. In contrast, the repossessor in this case went onto private property to initiate the repossession and plaintiffs informed the officers that the VIN of the car the repossessor was taking did not match the title in his possession. These two facts go to the propriety of the officers' actions: repossessing a car to which one indisputedly has title when it is parked on a public street requires less official sanction from officers than doing so when the car is not subject to repossession and is parked on private property.[8]

---

[8] We consider all relevant, undisputed facts in our summary judgment analysis, including whether the repossession took place on a public street or in a private driveway. A federal district court has explained the significance of a repossession's occurring in "a public place removed from the [plaintiff's] residence:"

When debtors specifically object to repossession, they revoke any implied right previously granted to the creditors to enter the debtor's

(continued...)

-16-

Procedurally, *Menchaca* arose in the context of dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  The Fifth Circuit relied on the fact that "[a]lthough the allegations of a complaint are taken as true in a challenge to a plaintiff's right to any relief, they may be tested by extraneous evidence when the court's jurisdiction is attacked."  *Menchaca*, 613 F.2d at 512.  The district court had held a jurisdictional fact-finding hearing to take the testimony of "both plaintiffs and three of the defendants . . . under direct and cross examination."  *Id.* at 510.  It then made findings "based on its evaluation of the testimony of all the witnesses."  *Id.*[9]  In our case, the district

---

(...continued)
> property without consent.  Entering the debtors' property after consent is revoked constitutes a breach of the peace.  The basis for favoring debtors over creditors in these circumstances appears to be the law's historical aversion to trespass.

*James v. Ford Motor Credit Co.,* 842 F. Supp. 1202, 1208 (D. Minn. 1994) (citations, elipses, and internal quotation marks omitted); *see also* Billings, § 11.25 (listing "where the possession took place" and the "type of premises entered" as two of the six factors to be considered in deciding whether there has been a breach of the peace).

[9]    As the *Menchaca* dissent pointed out, several facts were disputed, including whether the officers told the owners that the repossessors had the right to repossess the car and whether the officers told one of the owners he would be arrested if he did not turn over the keys.  613 F.2d at 514.

court was faced with a motion for summary judgment and was not empowered to make factual findings based on credibility determinations.[10]

While no single fact or inference is determinative of whether the officers affirmatively aided Mr. McCollum, under plaintiffs' version of the facts a jury could find that the officers did more than merely acquiesce or stand by in case of trouble. The controlling question to be resolved by a factfinder is whether the officers were simply keeping the peace, as they were entitled to do, or aiding Mr. McCollum, as they were not.

Crediting plaintiffs' version of the facts, as we must, the objective evidence raises a fact issue as to whether the police officers were neutral in their efforts to keep the peace.[11] Plaintiffs initially resisted the repossession by objecting with

---

[10] Contrary to the dissent's contention, dissent at 8, n.3, the procedural situation of *Menchaca* diverges from that of *Barrett*, 189 F.3d at 300; *Jones*, 909 F.2d at 1212; and *Booker*, 776 F.2d at 273-74. Both *Barrett* and *Booker* were decided on motions for summary judgment. Neither was resolved after factfinding on the part of the district court. As for *Jones*, the appellate court determined that the district court erred in entering a directed verdict in favor of defendant on the state-action issue. Considering the evidence "in a light most favorable to [the plaintiff] and giving [him] all of the favorable inferences to which he is entitled," the court concluded that the trier of fact should determine whether the officer's conduct amounted to state action. *Jones*, 909 F.2d at 1212. *Jones* actually underscores the distinction between *Menchaca* and the instant case.

[11] The dissent claims that the majority opinion wrongly emphasizes the Marcuses' subjective view of the situation. Dissent at 13-14. In making this assertion, the dissent ignores the well-established need to "recount the facts in the light most favorable to the party opposed to summary judgment, namely Plaintiff[s]." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1200 (10th Cir.

(continued...)

-18-

raised voices and attempting to unhook the automobile from the tow truck. And only after the police intervention did plaintiffs quit their efforts to stop the repossession. The officers may have precluded a property owner from exercising her right to prevent her lawful property from being towed away from her own driveway. *See Ben Cooper Motor Co.*, 287 P. at 1018.

In any event, what exactly each of the officers did and said, to whom, in what tone, and with what indicia of state sanction are issues that should be determined at trial. Plaintiffs have raised sufficient evidence of state action to defeat the summary judgment motion. We reverse the grant of summary judgment in favor of the police officers on plaintiffs' § 1983 claim.

---

(...continued)
2004).

The dissent also asserts that officers other than Officer Wilson were "neutral," by citing Mrs. Marcus' deposition testimony. Dissent at 6. The cited statement must be placed in context. Mrs. Marcus testified that the "circle of officers standing in [her] front yard" was "just neutral," in that the officers did not call her names, lay hands on her, shout at Nicholas, or (except for the poking incident) attempt to grab him. Aplt. app., doc 4, ex. A at 93-94. In sum, Mrs. Marcus stated that the officers did not personally mistreat her. Nevertheless, advising her to "keep [her] mouth shut, go back in the house" or risk "jail that day" is not indicative of a neutral stance on the repossession. *Id.* at 83. The same could be said of the officer's statement that she, not Mr. McCollum, should "to go to small claims court and get a form and fill it." *Id.* at 92.

IV.

Defendant police officers assert that, even if their conduct amounted to state action sufficient to trigger § 1983 liability, they are entitled to qualified immunity. The doctrine of "[q]ualified immunity is designed to protect public officials who act in good faith, on the basis of objectively reasonable understandings of the law at the time of their actions, from personal liability on account of later-announced, evolving constitutional norms." *Pierce v. Gilchrist*, 359 F.3d 1279, 1299 (10th Cir. 2004). When a defendant raises the qualified immunity defense on summary judgment, the plaintiff must first "demonstrate that the defendant's actions violated a constitutional or statutory right." *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000) (quotation omitted). "[A]fter identifying the constitutional right[s] allegedly violated, courts must determine whether the conduct was objectively reasonable in light of clearly established law at the time it took place." *Pierce*, 359 F.3d at 1297.

On the present record, the initial qualified-immunity inquiry is readily resolved. The Supreme Court has recognized that possessory interests in property invoke procedural due-process protections, *see Fuentes,* 407 U.S. at 87, and "seizures of property are subject to Fourth Amendment scrutiny," *Soldal,* 506 U.S. at 68. Further, as previously noted, Oklahoma state law limits self-help to those situations in which a creditor holds a security interest and a breach of the peace is

-20-

avoided.  *See* Okla. Stat. tit. 12A, § 1-9-609.  The record contains sufficient evidence of constitutional and statutory violations to survive summary judgment.

We therefore proceed to the second inquiry, which is determining whether a right is clearly established:  that is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," *Saucier v. Katz*, 533 U.S. 194, 202 (2001).  The relevant question is whether reasonable officers, standing in the shoes of the officers here, could have believed their conduct in plaintiffs' driveway was lawful in light of clearly established law and the information available to them.

To answer the question at the summary judgment stage, we must again accept plaintiffs' version of contested facts, along with the undisputed facts.  It is undisputed that Officer Wilson informed Mrs. Marcus and Nicholas that the police "could not get involved" in a repossession and that "the police officers were there to keep the peace and make sure no one would get hurt."  Aplt. app. at 4(C) at 2.  As we stated above, a police officer's standby presence to observe and maintain the peace at a self-help repossession does not amount to official participation in a repossession or seizure.  In other words, one of the officers correctly articulated the controlling legal principle at the time of incident.

Plaintiffs contend, however, that the police actually intervened on the side of Mr. McCollum.  In their deposition testimony, they state that the officers

assumed, without good evidence, that Mr. McCollum had a repossessory right to the Pontiac and, through physical action and verbal threats, dissuaded plaintiffs from continuing their resistance to the repossession. Viewed in the light most favorable to plaintiffs, the record could support an inference that the police officers were aware of circumstances making their actions unlawful. *See Abbott*, 164 F.3d at 149 (holding that reasonable police officers should know from established precedent "that their role is not to be participants in property deprivations without notice and an opportunity to be heard"). State law limiting self-help to those situations where a breach of the peace is avoided, and federal law recognizing that an unlawful repossession can amount to state action and a deprivation of property actionable under § 1983, are both clearly established.

Although a ruling on qualified immunity should normally occur early in proceedings, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), at this point we cannot hold that the doctrine of qualified immunity applies. Genuine issues of material fact exist regarding whether reasonable officers, facing the circumstances of this case, would consider the actions here violative of plaintiffs' constitutional

and statutory rights.[12]  Thus, on this summary judgment record, we are unable to

conclude that the officers are shielded by qualified immunity.

V.

Accordingly, we REVERSE the district court's entry of summary judgment in

favor of the police officers and REMAND for further proceedings in accordance

with this opinion.

---

[12]     Despite the procedural posture of this case, the dissent contends that the
officers should be entitled to qualified immunity because their "actions were
objectively reasonable for the purpose of keeping the peace."  Dissent at 15.  It is
up to a factfinder to resolve disputed issues of fact and determine if the officers'
actions were indeed reasonable. The dissent's resolution of these issues is
especially surprising in light of the well-established Oklahoma law prohibiting
self-help repossession if a breach of the peace occurs.

03-6148, Marcus v. McCollum

**BRORBY**, Senior Circuit Judge, **dissenting**.

I dissent. I disagree with the majority's conclusion the police officers are individually liable, and alternatively, they are not otherwise entitled to qualified immunity.

As the district court pointed out, the only federal constitutional issue in this case is raised in Count IV of the Third Amended Petition, where the Marcuses allege Mr. McCollum "acted in concert" and "jointly" with the police officers to effect a "common purpose," in violation of the Fourth and Fourteenth Amendments, for the purpose of depriving them of the right to due process, equal protection and freedom from unreasonable searches. As pled, it is clear "joint" or "concerted" action is the gravamen of the Marcuses' federal claim, and the district court concentrated its analysis accordingly, determining no state action occurred.

In determining if a state action arose, we have held that when a party relies on the "joint action" test, we look to such a test "to determine whether a private party acted under color of law in causing an alleged deprivation of federal rights ...." *See Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir.

2000) (citations omitted). Under such circumstances, "[t]his circuit has held that one way to prove willful joint action is to demonstrate that the public and private actors engaged in a conspiracy." *Id.* at 1126. Under either a joint action or conspiracy § 1983 theory, we have said the plaintiff must prove "'both public and private actors share a common, unconstitutional goal.'" *Id.* (*quoting Anaya v. Crossroads Managed Care Sys., Inc.,* 195 F.3d 584, 596 (10th Cir. 1999)).

In this case, even when viewed in a light more favorable to the Marcuses, the evidence does not show Mr. McCollum and the police officers participated in a joint action or conspiracy, or otherwise shared a common, unconstitutional goal. As the Marcuses admit and the district court ruled, the repossession[1] clearly started prior to the arrival of any police officer, and no evidence in the record shows the police knew about the repossession in advance of Mr. McCollum's arrival. Accordingly, I find unavailing the majority determination a resolution of disputed facts is necessary to determine if "Mr. McCollum and Officer Wilson were engaged in a joint endeavor." If, as the majority claims, the theory of "joint endeavor" is not the gravamen of the complaint, and therefore, co-conspiracy is

---

[1] In their brief, the Marcuses contend this is not a repossession situation, and refer to it as a "taking" or "trespass" by the defendants. I agree with the majority's characterization of it as a "self-help repossession."

not an issue, it is unclear why they continue to assert a resolution of facts is necessary to decide if a "joint endeavor" existed.

Moreover, based on a fair reading of the appeal brief, I agree with the majority the Marcuses are abandoning their appeal against Mr. McCollum. However, by abandoning their appeal against Mr. McCollum, they are also abandoning the gravamen of their cause of action, because the theory of "joint" or "concerted" action, raised in their complaint, applies only to whether a *"private"* citizen's actions constitute a state action. *See Sigmon*, 234 F.3d at 1125. Thus, the majority inappropriately relies on the test of "joint endeavor" in determining whether the police defendants may be liable for a § 1983 violation.

Alternatively, even if we bifurcate the Marcuses' fourth cause of action and construe it purely as an action against the police officers, nothing in the record establishes either a Fourth Amendment violation for wrongful seizure or even excessive force, or a Fourteenth Amendment procedural due process violation for deprivation of property without prior notice or an opportunity to be heard. In examining these issues, I agree with the majority that "the circumstances must be 'examined in their totality,'" but disagree with the significance given the officers' actions.

First, the majority relies on the fact Mr. McCollum stopped and told Officer Wilson he intended to repossess the car and wanted him to be aware of the situation. But, as the district court pointed out, this "fact" was contained in a brief, rather than in an affidavit or other evidentiary form, and therefore, it was not considered for summary judgment purposes. Even if this "fact" is considered, it does nothing more than show the police became informed about a situation which might, and did, deserve attention for peacekeeping purposes.

Next, the majority places much emphasis on the fact Mr. McCollum waved Officer Wilson over to the area where the repossession was occurring. However, it is undisputed this happened after the repossession was in progress and a heated dispute had already begun. No evidence in the record shows Officer Wilson responded for any other reason than to assist in peacekeeping. Certainly, a police officer should respond to someone who flags or waves him over, or otherwise motions for help, regardless of whether he knows in advance it may involve a repossession situation.

The majority opinion also either omits other significant undisputed facts or fails to give appropriate significance to them. For instance, it is undisputed that once Officer Wilson arrived in the driveway, he believed the situation was so

-4-

heated it might get out of control.[2]  Besides speaking loudly to Mr. McCollum, the Marcuses admit "there was bickering" and "arguing," and the "taking of the automobile was not peaceful."  Mrs. Marcus also admits she bickered with Officer Wilson and possibly cursed at Mr. McCollum, although neither the police nor Mr. McCollum cursed at her.  One reason Mr. McCollum sought police assistance included his concern for Nicholas's safety as he repeatedly attempted to unhitch the car while the tow truck was preparing to and did move.  Clearly, from the undisputed facts presented, Officer Wilson's involvement in this case arose for the purpose of peacekeeping and preventing injury by or to the parties.

I also disagree with the majority's conclusion summary judgment is inappropriate because it "may be pertinent" to determine "whether Mr. McCollum's actions provoked a breach of the peace."  Certainly, such an inquiry is unnecessary.  Our only inquiry rests on the reason for the police involvement, which in this case, clearly arose for the purpose of peacekeeping, regardless of who provoked a breach of peace.

---

[2]  The Marcuses do not dispute this, as they admit not knowing what the officer believed.

-5-

As to the other police officers, they arrived solely because of the dispatch call Officer Wilson made before he went to the Marcuses' driveway. The majority suggests the objective evidence raises a fact issue as to whether they were "neutral in their efforts to keep the peace." I disagree. Mrs. Marcus stated these other officers arrived only after she retreated to the porch, and they acted "neutral," did not appear to know what was going on, took her report, and after learning of the situation, advised her to go to small claims court. These actions do not constitute a wrongful attempt to facilitate the repossession or prevent the Marcuses from resisting it. As to the majority's suggestion these officers were as culpable as Officer Wilson because they advised Mrs. Marcus to shut her mouth or risk going to jail, the district court correctly pointed out Mrs. Marcus did not clearly identify in her deposition, or elsewhere, which officer said this, or to whom the statement should be attributed. These additional officers should not stand trial for a statement which has not been attributed to them. Moreover, it appears any threat of arrest was directed at Mrs. Marcus for breach of the peace, and not, as the majority suggests, for resisting repossession.

Even if attributable to any of the officers, the majority places too much weight on the statement that Mrs. Marcus should keep her mouth shut or she could go to jail that day, or Officer Wilson's statement that if the situation escalated

-6-

"someone" would go to jail. If, as Mrs. Marcus admits, she was using loud, argumentative language, and possibly cursing, which contributed to an unpeaceful situation, it was not unreasonable for a police officer to caution her, as did the police in *Menchaca*, who informed the plaintiff he could be arrested if he continued to use loud and abusive language to create a breach of peace during a repossession situation. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 510, 513 (5th Cir.), *cert. denied*, 449 U.S. 953 (1980). *See also Barrett v. Harwood*, 189 F.3d 297, 303 (2d Cir. 1999) (holding officer's actions in repossession situation, where he warned the plaintiff he would go in the back seat of his patrol car if he started trouble, amounted to no more than carrying out his duty to prevent violence in the event of a breach of peace), *cert. denied*, 530 U.S. 1262 (2000). To hold otherwise would chill future police action in attempting to diffuse situations before they escalate.

I find *Menchaca* instructive and the majority's attempts to distinguish it unconvincing. While the majority admits the facts in *Menchaca* resemble those in the instant case, the opinion suggests *Menchaca* is inapplicable because it addresses the issue of subject matter jurisdiction. However, the *Menchaca* court, like the district court here, determined from evidence offered that a state action did not occur. *See* 613 F.2d at 512-13. As the Eighth Circuit explained, the

determinative issue in ascertaining either subject matter jurisdiction or a constitutional violation under § 1983 is the same — i.e., did a state action or action under the color of state law occur? *See Jones v. Gutschenritter*, 909 F.2d 1208, 1210 (8th Cir. 1990). For this reason, many of the cases relied on by the majority either cite to or rely on *Menchaca*, even though those cases also do not involve the issue of subject matter jurisdiction, but turn on § 1983 liability for a state action.[3] On appeal, the Marcuses continue to assert this is a state action, and for this reason alone, *Menchaca* is instructive.

In addition, the majority distinguishes *Menchaca* on the facts because the repossession in that case occurred on a street and not, as here, on a private driveway, which the majority contends involves the additional issue of trespass. While the Marcuses brought a cause of action for trespass against the police officers, the district court dismissed it for lack of jurisdiction, and the Marcuses have not raised it on appeal. Moreover, it is clear a policeman's "trespass to

---

[3] *See Barrett*, 189 F.3d at 302; *Abbott v. Latshaw*, 164 F.3d 141, 147 (3d Cir. 1998); *Cofield v. Randolph County Comm'n*, 90 F.3d 468, 471 (11th Cir. 1996); *Harris v. City of Roseburg*, 664 F.2d 1121, 1126 (9th Cir. 1998); *Jones*, 909 F.2d at 1211; *Booker v. City of Atlanta*, 776 F.2d 272, 273-74 (11th Cir. 1985). Ironically, at least three of the cases on which the majority relies are similar to *Menchaca* because they involve the issue of subject matter jurisdiction, but are not relegated by the majority to the same "distinguishable" status as *Menchaca*. *See Barrett*, 189 F.3d at 300; *Jones*, 909 F.2d at 1210; *Booker*, 776 F.2d at 273.

property, negligent or intentional, is a common law tort; it does not infringe the federal constitution," and thereby does not give rise to a § 1983 action. *Wise v. Bravo*, 666 F.2d 1328, 1335 (10th Cir. 1981). Even under the context of the Fourth Amendment, we have determined police may come on private property to conduct an investigation if their movements are restricted to places visitors could be expected to go, including walkways, driveways and porches. *See United States v. Hatfield*, 333 F.3d 1189, 1194 (10th Cir. 2003). While the majority contends the place of repossession is a significant factor in determining if a breach of peace occurred, in this case, the question is not whether a breach of peace ensued, but rather, whether the officers somehow went beyond their peacekeeping duties to improperly assist with the repossession. Accordingly, the district court properly dismissed the trespass issue in this case, and it should not be a factor, either in this appeal, or for the purpose of distinguishing other cases from the one here.[4]

As to the legality of the repossession, the majority points out the officers may have looked at Mr. McCollum's "piece of paper," but they did not ask for further documentation and should have known of the illegality of the repossession.

---

[4] Equally unavailing is the majority's attempt to distinguish *Menchaca* because in that case the district court was afforded the opportunity to observe the credibility of the witnesses. This difference is irrelevant because in this case all the evidence must be viewed in the Marcuses' favor as the nonmoving party.

First, the Marcuses fail to provide the mystery "piece of paper" for our review on appeal. Second, even if the officers did not ask for further documentation or verify the vehicle identification number, this is a self-help repossession case, and the police clearly arrived for the purpose of standing by to keep the peace, rather than for the purpose of determining rightful ownership of the vehicle. The majority has not pointed to any statute or case which establishes the police, in a self-help repossession situation, have a duty to determine rightful ownership of the vehicle. In fact, to have the police do so could actually violate procedural due process. *See, e.g., Abbott*, 164 F.3d at 149 (explaining *Fuentes v. Shevin*, 407 U.S. 67 (1972), stands, in part, for "the principle that it is not for law enforcement officers to decide who is entitled to possession of property").

Next, as the district court noted, no evidence shows the officers knew the repossession was illegal. In fact, in this case, the ownership of the vehicle was still in dispute at the time of the district court's summary judgment decision.[5] If the legality of the repossession remains in dispute throughout litigation, how then could the police be expected to make such a determination in a matter of minutes? Such a court-mandated requirement would place an untenable burden on police

---

[5] Even on appeal, it remains unclear whether ownership of the vehicle is resolved.

officers in self-help repossessions. The majority's reliance on Oklahoma law, which allows a self-help repossessor to take possession of the property only if no breach of peace occurs is unpersuasive. It applies to the private party repossessor and does not place a duty on officers to stop a self-help repossession. As the majority suggests, officers should not conduct a "curbside courtroom." Moreover, the majority's suggestion a volatile situation could be diffused by simply "direct[ing] both parties to seek a judicial determination," does not account for the realities of the world, when angry parties confront each other and officers must prevent an escalating breach of peace or prevent them from acting violently.

Finally, the majority relies on the Marcuses' statements that Officer Wilson poked Nicholas Marcus several times in the chest with sufficient force to knock him backwards, for the purpose of establishing a § 1983 violation. This is contested, and therefore, according to the majority, raises a material issue of dispute. The majority further contends the alleged "poking" action, together with verbal threats of going to jail, are objective evidence raising issues of fact as to whether the police officers 1) acted neutrally; 2) credited Mr. McCollum's contentions over the Marcuses'; and 3) assisted with the repossession. However, even if we view the evidence in a light most favorable to the Marcuses, as did the district court, and consider the "poking" allegation true, it does not establish a

procedural due process or other constitutional violation merely because it occurred in the context of a repossession.

Specifically, in this case, it is undisputed Officer Wilson told the parties this was a civil matter in which he could not get involved, and he was there to keep the peace and make sure no one would get hurt. Therefore, it is clear he sufficiently communicated to the parties the police could neither help with nor terminate the repossession. It follows then that the police officers' actions, either in poking Mr. Marcus or warning of the possibility of going to jail for breaching the peace, were plainly for the purpose of keeping the peace, and not to aid the repossession. *See, e.g., Barrett*, 189 F.3d at 303 (holding officer's warnings applied to officer's duty to prevent violence in the event of a breach of peace, rather than a state action to facilitate the repossession). Under the circumstances in this case, the actions of Officer Wilson, who clearly believed he faced a breach of peace situation which was escalating, should be viewed in that context, and not as a means of facilitating a repossession.

Because the Marcuses claim a Fourth Amendment violation, it is reasonable for us to look at the police officers' actions in the context of an unreasonable seizure or excessive force. In so doing, we look at the amount of force used in

relationship to the need presented, the extent of the injury inflicted, and the motives of the officer, to determine whether the official abused his power to the point it shocks the conscience and is appropriate for redress under § 1983. *See Wise*, 666 F.2d at 1333-34. If we look at Officer Wilson's actions solely in conjunction with an attempt to keep the peace in a situation he undisputedly believed was escalating, poking Nicholas in a way which did not inflict injury is patently insufficient to shock the conscience and warrant § 1983 relief. *See, e.g., Dale v. Janklow*, 828 F.2d 481, 484-85 (8th Cir. 1987) (holding officer, who struck plaintiff, reasonably concluded plaintiff would use deadly force to prevent repossession of cattle).

The majority also places great emphasis on the Marcuses' subjective view the police officers' actions dissuaded them from continuing their resistance to the repossession. Admittedly, at least two other circuits have relied on the subjective view of the plaintiff during a repossession situation in determining whether a state action occurred. *See, e.g., Jones*, 909 F.2d at 1212 (considering intimidation factor because of police presence); *Booker*, 776 F.2d at 273, 274 (considering plaintiff's subjective view, stating officer's arrival with the repossessor gave situation a "cachet of legality" establishing state action). However, a **plaintiff's subjective** view is not relevant in the context of the qualified immunity defense,

even under a summary judgment standard of review.  Rather, even when viewing the evidence in favor of the nonmoving party, we look at the **objective** reasonableness of the **officers'** actions.  *See Lawmaster v. Ward*, 125 F.3d 1341, 1346-47, 1350-51 (10th Cir. 1997).

Under the Fourth Amendment, the "reasonableness" inquiry "is an objective one:  the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Specifically, in cases of seizure of property, "[t]he affirmative defense of qualified immunity provides that:  'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Haverstick Enter., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  If, as here, the officer's conduct fit into his peacekeeping duties, rather than for the purpose of assisting in the repossession, his actions are objectively reasonable.  *See, e.g., Haverstick* at 995-96 (recognizing qualified immunity for summary judgment purposes where officer may have reasonably concluded his actions fit into the category of keeping the peace, rather than

-14-

conduct to facilitate repossession); *Booker*, 776 F.2d at 274 (affording qualified immunity for summary judgment purposes where officer alleged good faith belief in the legality of his actions, even though he arrived with the repossessor, which intimidated the plaintiff and gave the repossession the "cachet of legality"); *Harris*, 664 F.2d at 1128-30 (holding qualified immunity protects officer monitoring self-help repossession for peacekeeping purposes where a reasonable officer in his position would not have known his actions constituted invalid participation in the taking).

For the reasons previously stated, the Marcuses have not shown, under their qualified immunity burden of proof, that the officers' actions were not objectively reasonable, in either poking Mr. Marcus or otherwise threatening the Marcuses with arrest if they did not cease using loud, argumentative, or otherwise abusive language. Because the police officers' actions were objectively reasonable for the purpose of keeping the peace, qualified immunity should protect them.

To hold otherwise would place officers in an unreasonable, impracticable, "Catch-22" position of watching a self-help repossession for peacekeeping purposes, but not taking any action to diffuse the situation to prevent the private parties from injuring each other. The basic purpose of qualified immunity "is to

spare individual officials the burdens and uncertainties of standing trial in those instances where their conduct would strike an objective observer as falling within the range of reasonable judgment." *Gooden v. Howard County, Md.*, 954 F.2d 960, 965 (4th Cir. 1992) (holding "[i]n cases where officers are hurriedly called to the scene of a disturbance, the reasonableness of their response must be gauged against the reasonableness of their perceptions, not against what may later be found to have actually taken place."). To advance to trial for § 1983 liability under the circumstances in this case, I believe, would defy the underlying reason for the defense of qualified immunity.

For these reasons, I would affirm the district court's decision to grant the Defendants' summary judgment motion and dismiss the Plaintiffs' § 1983 action.